ELIZABETH WENZEL, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 25878.)

HERMAN G. WENZEL, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 25879.)

EUGENIE C. DUNN, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 25903.)

Court of Claims, August 24, 1942.

Rathkopf & Rathkopf [Samuel L. Greenberg of counsel], for the claimants Elizabeth Wenzel and Herman G. Wenzel.

Samuel L. Greenberg, for the claimant Eugenie C. Dunn.

John J. Bennett, Jr., Attorney-General [Burns F. Barford, Assistant Attorney-General, of counsel], for the defendant.

DYE, J. The claimants sustained personal injuries in an automobile accident which occurred on December 3, 1939, in the village of Freeport, Long Island. At the time of the accident, the claimants were passengers in an automobile which collided with the concrete base of a traffic stanchion that had been erected at a point in the center line of Sunrise Highway and the westerly curb line of Grove street extended. The concrete base was three feet in diameter, 2.60 feet high and weighed approximately two tons. Affixed to the top of the concrete block was a metal standard supporting a traffic control device consisting of a vertical panel of electrically lighted red, amber and green discs that operated automatically at fixed intervals. The structure was fourteen feet in height and had been painted with aluminum. The concrete base was scarred and discolored so that it blended with the pave-

ment. There were no distinguishing or contrasting marks, colors, reflectors or other warning devices of any kind calling attention to the concrete base which extended eighteen inches into the traffic lane on either side of the center line. Sunrise highway at this point consisted of four parallel lanes of concrete, each ten feet in width, with a cinder shoulder extending to the curbs.

On the evening of the accident, it had been raining, the pavement was wet, the atmosphere was misty and there was a low, rolling fog, so dense at times that it obscured the structural parts of the traffic stanchion and so affected visibility that it could not be readily determined whether the vertical panel containing the signal lights was a centrally suspended or fixed-base type.

The traffic stanchion had been erected by the village of Freeport in 1926 and thereafter, in 1932, it was taken over by the State for operation and maintenance. At the time of the collision, the stanchion was in substantially the same location and presented the same general physical appearance and condition as existed at the time of its erection.

The accident occurred at about 1:30 A. M. and neither the driver nor the injured passengers saw that the signal panel was affixed to a stanchion until the instant of the collision. The green disc was illuminated. The car was being driven at a moderate rate of speed in the lane nearest the center and shortly before the collision had passed to the left of a vehicle traveling on the right, in the same direction. It is contended that because of this, the driver was negligent and that his negligence was the proximate producing cause of the collision. The driver's negligence, if any, is not attributable to the passenger.

We must look to all the circumstances surrounding the event and determine whether the State in allowing a fixed-base stanchion type of signal device to remain on a busy thoroughfare under the existing conditions amounted to the maintenance of a nuisance and if so, whether its failure to warn users of the highway of its existence constituted negligence. The stanchion, as originally erected, was proper and conformed to standards approved for traffic control devices. Our questions, however, must be answered in light of the circumstances surrounding the accident. (*Annino* v. *City of Utica*, 276 N. Y. 192.) If the existence of the stanchion at that time was unreasonably dangerous, " it makes little difference whether the danger be said to flow from the maintenance of a nuisance or from a negligent omission to guard the wayfarer." (*Koehler* v. *City of New York*, 262 N. Y. 74, 78.)

Lawful inception will not exonerate the State from consequences of conditions which changing circumstances render hazardous and,

but for the State's negligent omission, could be avoided. (*Stern* v. *International R. Co.*, 220 N. Y. 284.)

The State was generally aware of the danger inherent in a fixed-base traffic stanchion. Its Traffic Commission, created under chapter 910 of the Laws of 1936, had adopted the manual on uniform traffic control devices and for several successive years had made reports to the Legislature recommending the removal of traffic stanchions and the substitution of centrally suspended light panels and had followed this up by ordering their removal *as constituting a danger to traffic, and where necessary such signs or signals shall be replaced by one conforming to standard of commission.* (Annual Report of Traffic Comm., 1936, 1937, 1938, 1939.)

These reports, however, are not conclusive as to the existence of a nuisance and do not render the State liable in negligence, unless in fact a dangerous and negligent condition actually exists as viewed in the light of surrounding circumstances. At most, such reports are only admissions against interest. (Wigmore on Evidence [3d ed.] § 282.)

Previous accidents had occurred at this same stanchion, of which the State was fully aware and must have known that " tested by actual experience it has proved dangerous and naturally calculated to cause accidents." (*Gastel* v. *City of New York*, 194 N. Y. 15.)

The State is under the absolute duty of keeping its highways in a reasonably safe condition for travel and is bound to exercise reasonable care to accomplish that end. (*Thompson* v. *State of New York*, 154 Misc. 707.)

The stanchion, under the circumstances, amounted to a nuisance. It could not be seen in the low, rolling fog conditions. It projected into the travelled portion of the highway lane eighteen inches. The light panel was similar in design, size and appearance to the centrally suspended light panels and at approximately the same height from the street. It was the only remaining stanchion on Sunrise highway, all the others having been removed and centrally suspended light panels installed. The failure of the State to adequately warn users of the highway of the existence of this standard amounted to negligence. Low, rolling fogs are of frequent occurrence on Long Island and, on a wet misty night, a prudent person might reasonably expect such conditions would so obscure visibility that a stanchion of this type and color would blend so completely into its surroundings as to be invisible to an approaching motorist.

It is contended that the failure of the State Legislature to appropriate moneys for the building of a parkway and the reconstruction of the traffic signal system along the route of Sunrise highway exonerates the State from liability. This contention is without

merit when viewed in the light of the circumstances. Abatement of this particular nuisance could easily have been accomplished without changing the design of the highway, particularly when others along the highway had been removed without waiting for the special appropriation.

An award should be made in the amounts indicated in the respective decisions filed herewith.