ERNEST PANUNZIO, as Administrator of the Estate of THOMAS PANUNZIO, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent.

(Claim No. 24900.)

Third Department, April 28, 1943.

*Andrew J. Malatesta* and *Bernard Ellenbogen*, for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor General; James H. Glavin, Jr.*, of counsel), for respondent.

*Per Curiam.* This is an appeal from a judgment of the Court of Claims which dismissed the claim herein upon the merits, after trial. The claim is for damages arising out of the death of appellant's intestate, a boy of twelve years, who on June 2, 1935, fell into the Barge Canal from a platform or " cat-walk " attached to Movable Dam No. 7, located at or near Amsterdam, New York. Movable Dam No. 7 was constructed and operated by the State as part of its canal system, its function being to create, maintain and regulate suitable water levels in the canal section of the Mohawk River, westerly thereof. This movable dam consists of a steel overhead structure from which nineteen large steel gates attached to heavy steel uprights extend down into the stream and regulate its flow. The gates are so constructed as to permit vertical independent movement of each individual gate. Attached to, and extending across the easterly face of the dam and about eighteen to twenty feet from the downstream water level are a series of platforms, or cat-walks, which, however, do not extend to the shore on either side of the canal channel. These platforms, or cat-walks, were separated by spaces of ten or twelve inches between each pair

of steel uprights and by spaces of eleven feet at each of the two concrete supporting channel abutments. They were designed and constructed for the purpose of enabling workmen to perform necessary maintenance and repair operations upon the gates and the mechanism of the dam structure. The structure was so designed that the gates, uprights, cat-walks and incidental mechanism could be swung up under the upper steel structure. The gaps, or spaces, between the sections of cat-walks were designed to permit independent movement of the various gates and to afford clearance when the gates, uprights and cat-walks were swung up under the upper steel structure to allow the unobstructed flow of the canalized Mohawk River during the periods when navigation was closed. At the time of the accident a plank board walk, about twenty inches wide, consisting of two planks held together by cleats, extended across the eleven-foot gaps at each of the channel piers. It appears that one who endeavored to use the cat-walk was obliged to jump from the shore to the first platform and after crossing the dam was obliged to jump from the platform level to the shore. Steel fences and gates had been erected by the State at both ends of the dam at points where the cat-walks approach closest to the shore piers. The Court of Claims found that at the time of the accident and for a long time prior thereto the State had caused signs to be prominently displayed forbidding trespassers and warning of danger.

Apparently for upwards of thirteen years prior to the date of the accident on which this claim is based, adults and children had openly crossed this dam for the purpose of going to the south shore of the Barge Canal to fish, swim and hunt. On June 2, 1935, between 3:00 p. m. and 4:00 p. m., appellant's intestate, with his brother Albert, then thirteen years of age, and some of his brother's friends, had crossed over the cat-walk from the north to the south shore where some of the boys went in swimming. It was apparently the first time this boy had crossed the river on this dam structure. While returning from the south shore and when appellant's intestate had reached the eleven-foot long and twenty-inch wide planking connecting the cat-walks at the southermost pier, he lost his balance and fell into the Mohawk River and was drowned. At this point there is no guard rail. It is conceded that a steel fence and a swinging gate were erected at either end of the cat-walk, but the court found that whether these gates were closed or swung ajar at the time of the accident is a disputed point.

The State contends that appellant's intestate was a trespasser, or at best a mere licensee to whom respondent owed no duty except to refrain from inflicting intentional, wanton or willful injuries. Claimant, on the other hand, charges negligence, *first,* in maintaining the structure without providing proper, safe and sufficient railing, walks and guards; and *second,* in permitting the said dam to be used for crossing the river without objection on the part of the State's employees.

The crossing on the cat-walks of this dam was an obvious hazard and the lower court has so found. Movable Dam No. 7, involved here, and many others of a like character are necessary elements in making navigation feasible upon the State Barge Canal. It was erected by the State upon its own property for the purpose of carrying on its business of canal navigation.

Clearly, this boy at the time of this unfortunate accident was a trespasser, and the continued unlawful use of this cat-walk does not create a liability to make it safe for trespassers. '' The most that can be said in favor of appellant's contention is that the State suffered the use of this strip of its canal for purposes of passage over or upon it; but it was merely by sufferance that it was so used, and not by any agreement or permission. Nor did the State owe any active legal duty to protect those who so made use of its land. It owed a duty to abstain from injuring the plaintiff, either carelessly or intentionally; but it owed her no duty of active vigilance to see that she was not injured, while upon the land for her own convenience.'' (*Donahue* v. *State of New York,* 112 N. Y. 142.) And even assuming that this boy was not a trespasser, though the court below found otherwise, but that he be deemed a licensee, there is still no basis for liability. If he had no permission to come on the premises, he was a trespasser, but if he was there by permission for his own convenience, his status was that of a bare licensee. ''Long-continued acquiescence in such use does not become an invitation. The law does not so penalize good nature or indifference nor does permission ripen into right.'' (*Vaughan* v. *Transit Development Co.,* 222 N. Y. 79.) The only duty the State owes to a trespasser or a bare licensee is to abstain from affirmative acts of negligence or not to injure intentionally such person (*Morse* v. *Buffalo Tank Corp.,* 280 N. Y. 110), and as owner of the land is not liable in damages for injuries '' to a bare licensee or trespasser resulting from a mere defect in the premises.'' (*Breeze* v. *City of New York.* 249 App. Div. 856.)

In *Mendelowitz* v. *Neisner* (258 N. Y. 181) Judge CRANE, writing for a unanimous court, said at page 184: "Where a person goes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence; for such person has taken all the risk upon himself. Such is the law as expressed in *Fox* v. *Warner-Quinlan Asphalt Co.* (204 N. Y. 240, 243) and *Sterger* v. *Van Sicklen* (132 N. Y. 499). Toward mere trespassers or bare licensees the rule is well settled that the only duty owing to them by the owner or occupier of land is to abstain from inflicting intentional, wanton or willful injuries unless he maintains some hidden engine of destruction, such as spring guns or kindred devices, upon his property. (*Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 452; *Birch* v. *City of New York*, 190 N. Y. 397.)"

There is nothing in the evidence which would warrant a finding that appellant's intestate's death was due to any act or negligence on the part of the State or its employees, and the claim was properly dismissed on the merits. To cross on this structure was a dangerous task, so dangerous as to give notice that it was not intended for public passage. As the lower court observed, the structure, itself, was a warning of hazard.

The judgment must be affirmed.

HILL, P. J. (dissenting). The Mohawk River, at Movable Dam No. 7, as well as at most other places, is navigable and a public highway. The dam, which looks like a bridge, was erected by the State to further and promote the use of the river as a highway and Barge Canal. The platforms attached to each of the aprons or gates form a continuous walk from the northerly to the southerly shore, except for spaces of ten or twelve inches between each of the nineteen gates, and in the interest of safety railings had been constructed along the downstream side of the walk so that a pedestrian would be protected from the danger of falling. The narrow ten or twelve inch openings presented no hazard. Opposite the two abutments there were no gates. These two spaces of eleven feet in length were bridged by two planks, held together by cleats, more than eleven feet in length and at least twenty inches wide, but with no railing on the downstream side. These two planked connections made a continuous walk from one bank to the other. The gates at the northerly and southerly ends were open and the public for a long time had used these facilities in crossing the river. Plaintiff's intes-

tate fell into the river at a point where the walk had no rail. The State was liable. (*Hynes* v. *N. Y. C. R. R. Co.*, 231 N. Y. 229; *Ehret* v. *Village of Scarsdale*, 269 N. Y. 198; cf. *Tymon* v. *M. L. S. Construction Co.*, 262 N. Y. 161; *Keenan* v. *Lawyers Mortgage Co.*, 280 N. Y. 525.)

We may imagine a somewhat similar structure over a public street with steps approaching the cat-walk at each end, erected to permit employees to care for a lighting system, or other municipal purpose, but used generally by the public to pass from one side of the street to the other. The municipality would be liable for damages resulting from failure to provide proper railings. It is urged that "the law enforces the reasonable expectations arising out of conduct, relations and situations." (Pound's Introduction to the Philosophy of Law, p. 189; Cardozo's The Growth of the Law, p. 102.)

I favor reversal.

CRAPSER, BLISS, HEFFERNAN and SCHENCK, JJ., concur in Per Curiam opinion; HILL, P. J., dissents, in an opinion.

Judgment affirmed, without costs.