WALTER SHER, an Infant, by MOE SHER, His Guardian ad Litem, et al., Plaintiffs, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28733.)

Court of Claims, January 25, 1949.

*Bernard Eilen* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Sidney B. Gordon* of counsel), for defendant.

GORMAN, J. In the afternoon of July 4, 1947, Moe Sher, with his wife and two children, was driving his new Chevrolet sedan in a northerly direction upon the Taconic State Parkway. The parkway is divided into separate lanes for north and south bound traffic. The easterly lane is two-strip concrete, bordered by a three-inch concrete curb. Along and adjacent to the highway, and within the State's right of way, certain level grassy areas had been constructed, and at various places along the way the State had posted signs reading " Park disabled cars on grass ". There were also occasional " No picnicking " signs.

As the Sher car approached a point about two miles north of the intersection with Route 52, its occupants observed such a level grassy area extending along the east side of the highway for several hundred feet. One of the Sher children was a year old infant. Mrs. Sher asked her husband to stop the car while she gave the baby a bottle of milk. He slowed down to about ten miles per hour and drove over the curb and along the grass, parallel with and about a car's width from the pavement. Three other cars had already parked in the area. While so proceeding, the front end of the Sher car dropped down into a hole or ditch entrance to a culvert, injuring the claimants and damaging the car.

This ditch had been constructed by the State for drainage purposes and consisted of a depression some eight or ten feet in length, two or three feet wide and two feet deep at the end nearest to the traveled portion of the highway. It tapered easterly in depth to ground level. It was unguarded and unmarked, and on the day of the accident concealed and camouflaged by grass and weeds. These had grown up around and in the depression, and previous to the accident had been cut to the same height as the grass on the surrounding terrain, so that the area presented a level appearance and the outlines of the depression were not discernible.

This parkway was several miles long, without shoulders, and had been built for the convenience and safety of fast moving traffic from the metropolitan area. There was no place provided for parking, except these grassy areas located at irregular intervals. These had been constructed by and were under the control and maintenance of the State of New York.

The serious question herein involves the existence and extent of the State's duty, under the circumstances. Our attention has not been called to any case directly in point or determinative of the issue.

One who voluntarily and unnecessarily deviates from the traveled portion of the highway and in so doing meets with an accident from some cause outside the traveled way, cannot, as a general rule, recover for injuries sustained. (See *Ireland* v. *Oswego, Hannibal & Sterling Plank Road Co.*, 13 N. Y. 526; *King* v. *Village of Fort Ann*, 180 N. Y. 496; *Flansburg* v. *Town of Elbridge*, 205 N. Y. 423.) " ' The owner or occupier of real property is under no obligation to make it safe, or to keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it without his invitation, express or implied.' " (*Birch* v. *City of New York*, 190 N. Y. 397, 403; *Carbone* v. *Mackchil Realty Corp.*, 296 N. Y. 154.) The only duty the State owes to a trespasser or bare licensee is to abstain from affirmative acts of negligence or not to injure intentionally such person. (*Panunzio* v. *State of New York*, 266 App. Div. 9, affd. 292 N. Y. 625; *Morse* v. *Buffalo Tank Corp.*, 280 N. Y. 110.)

An exception to the general rule as to lack of affirmative duty exists where an owner permits a part of his premises to be used as a public passageway and creates a dangerous condition, in the nature of a snare, in the immediate proximity of such passageway. (*Beck* v. *Carter*, 68 N. Y. 283; *Danna* v. *Staten Island Rapid Transit Ry. Co.*, 252 App. Div. 776, affd. 277 N. Y. 714.) The exception which casts liability is the maintenance of such a condition so close to the public highway, that a person traveling thereon may, by a slight deviation, enter upon such lands and suffer injury. (*Bennett* v. *City of Mt. Vernon*, 243 App. Div. 119.)

As the court said in *Hadley* v. *Taylor* (L. R. 1 C. P. 53, 55) in approving damages where the hole was fourteen inches from the side of the road: " It is extremely difficult to draw the line between what is and what is not such a proximity to the highway as to constitute an actionable nuisance." We think it makes no difference here, whether the depression was immediately adjacent to the paved portion of the highway, if it was so situated that a person lawfully and reasonably using the thoroughfare was liable to fall into it. The nature and purpose of the highway, designed as it was for high speed travel, the absence of any customary shoulder, the low curb and availability of the contiguous level plot for parking without apparent danger,

the presence of other parked cars together with the ambiguity in the meaning of the signs, factually refute the claim of trespass or mere license in this case.

" The State is obligated to maintain its highway in a safe condition for travel, not only with regard to obstructions and defects in the traveled portion of the road, but also with regard to conditions adjacent to and above the highway which might reasonably be anticipated to result in injury and damage to the users thereof." (*Brown* v. *State of New York,* 58 N. Y. S. 2d 691, affd. 271 App. Div. 811; *Shaknis* v. *State of New York,* 251 App. Div. 767, affd. *sub nom., Doulin* v. *State of New York,* 277 N. Y. 558.) Reasonable use of a public highway depends in part upon the usage of the community and the needs of the public with regard to travel or transportation, and may vary according to time and place. Public highways now include not only a " public place " but also a " public driveway or any other public way " and indicates the policy of the State to meet the conditions created and constantly altered and enlarged by the automobile to include every " public way " upon which an automobile might lawfully be operated by the public. (*People* v. *County of Westchester,* 282 N. Y. 224, 228.)

This parkway was heavily traveled. The signs reading " Park disabled cars on grass " were an invitation and a command. The State having in this manner directed the parking of disabled cars upon the grass, must reasonably have intended the parking of cars thought to be disabled. Any other necessary and reasonable deviation in close proximity to the highway, which naturally flowed from such admonition, would be within the range of reasonable expectation. In the absence of express prohibition, any other implication would conflict with the custom and common sense. We may assume reasonably that the State directed travelers to park their disabled cars upon the adjacent grass in order to facilitate travel upon the parkway with greater safety to all concerned. We cannot assume reasonably that the State intended obstruction of the highway and denial of such protection in every other case. We think the deviation herein was reasonable and should reasonably have been foreseen. The claimants, in the absence of other facilities for necessary and reasonable parking, and there were none at or near the scene of the accident, had a right to use this portion of the area for the aforesaid purpose and were entitled to find it in a reasonably safe condition. (*Beck* v. *Carter,* 68 N. Y. 283, 293, *supra; Wager* v. *State of New York,* 257 App. Div. 580; *Wilke* v. *State*

*of New York,* 178 Misc. 765; *Lyons* v. *State of New York,* 274 App. Div. 1086.)

The depression, as constructed, may have involved no unreasonable risk. It became dangerous by reason of the manner in which it was maintained. " Lawful inception will not exonerate the State from consequences of conditions which changing circumstances render hazardous and, but for the State's negligent omission, could be avoided." (*Wenzel* v. *State of New York,* 178 Misc. 932, 934–935; *Stern* v. *International Ry. Co.,* 220 N. Y. 284.) The evidence supports findings that the State knew that cars, at times, would park in this area, and that, having such knowledge, if it continued to leave the depression unguarded, should have anticipated that injury might follow. It was the duty of the State to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care. (*Snowden* v. *Town of Somerset,* 171 N. Y. 99, 105–106.) The existence of the unguarded and hidden depression presented a hazardous condition proximately producing the accident, for which the State should respond in damages. There is also sufficient evidence to support the conclusion that the claimant driver exercised reasonable care under all the circumstances and that claimants were not guilty of contributory negligence.

In the accompanying decision separate awards are made to claimants for the injuries and damages sustained.