FREDA MILLER et al., as Administrators of the Estate of BETTY N. MILLER, Deceased, Claimants, *v*. STATE OF NEW YORK, Defendant. (Claim No. 29323.)

FREDA MILLER et al., as Administrators of the Estate of LOIS J. MILLER, Deceased, Claimants, *v*. STATE OF NEW YORK, Defendant. (Claim No. 29324.)

Court of Claims, August 20, 1951.

Robert D. Stone and Donald F. McManus for claimants.

Nathaniel L. Goldstein, Attorney-General (David Marcus of counsel), for defendant.

LOUNSBERRY, P. J. The above claims arise from the deaths of two sisters, Betty Noreen Miller and Lois Jean Miller, in an accident which occurred while they were riding as passengers in a car operated by one Robert L. Bundy along State Highway Route 17C, between Endicott and Binghamton, at about 1 o'clock in the morning of June 18, 1948. Bundy had left the Grasse Pavilion at Endicott a few minutes earlier, accompanied by a friend, Beverly J. Jenkins, and had undertaken to drive the Miller girls, who had also been to the pavilion, to their home in Binghamton. His car was a two-door coupe model with but one seat, which was occupied by Bundy and Miss Jenkins. The Miller girls sat on blankets in the space between the back of the seat and the front of the trunk.

Route 17C is a heavily traveled road with a four-lane concrete pavement, forty feet in width, lighted by 10,000 lumen sodium vapor lamps placed at intervals of about 215 feet. A speed limit of thirty miles per hour was in effect at the place and time of the accident. As one proceeds easterly along this highway toward Binghamton and approaches the Patterson Creek Bridge, scene of the accident, the road begins to curve to the left, which curve continues beyond the bridge. The bridge itself is about forty feet in length, crossing a small stream. At a point about seventy feet west of the bridge the Bundy car ran off the pavement onto the right hand shoulder, collided with some part of the bridge, went out of control, overturned, and then skidded about 150 feet on its top before it came to rest near the center of the pavement easterly from the point of impact. Bundy and Miss Jenkins were thrown free but the Miller girls were trapped inside the car, which immediately caught fire. Rescue was impossible and they perished in the flaming wreck. The car was demolished.

The gravel shoulder along the right-hand side approaching the bridge was in good condition and about eight feet in width. For a considerable distance west of the bridge, a guardrail, consisting of white posts set at ten-foot intervals with connecting steel cables, extended along the outer edge of such shoulder and

terminated at the bridge parapet, to which the cables were connected. The parapet, consisting of a concrete wall eight inches thick, three feet high at each end and three feet, eleven inches high at the center, was located about seven feet from the south edge of the pavement. Between it and the pavement was a concrete sidewalk, extending the length of the bridge, five feet wide and elevated about eight inches above the surface of the shoulder. Its north edge was about two feet from the edge of the pavement. The end of the sidewalk, facing west, thus formed in effect a solid barrier eight inches high across five of the seven feet between the parapet and the pavement, so that a vehicle proceeding along the right-hand shoulder and more than two feet outside the edge of the pavement would, if it continued in such course, run against the end of the walk.

The claimants assert that such was exactly what befell Bundy. They maintain that he was forced off the road by a car which cut in close when overtaking and passing him and that his car was thereby precipitated against the end of the sidewalk, resulting in its fatal overturn and skid. They contend that the walk constituted an improper and dangerous obstruction of the shoulder for which the State should be held responsible.

In taking this position, the claimants are relying on the principle that the shoulder of the highway must be maintained in reasonably safe condition for use when occasion requires. Such principle is well established, of course (*Taylor* v. *State of New York*, 288 N. Y. 542; *Goodwin* v. *State of New York*, 274 App. Div. 824, affd. 298 N. Y. 873; *Sher* v. *State of New York*, 194 Misc. 172), but it is subject to certain limitations and qualifications. In the first place it has been applied only when operation on the shoulder rather than on the pavement was a reasonable recourse by reason of some emergency or special condition. It has never been applied, so far as we can discover, where a driver negligently and without reasonable cause ran off the pavement. In the second place, the obstruction or dangerous condition complained of must have been the proximate cause, or at least one of the proximate causes, of the accident, a point to which we will advert later.

With these considerations in mind, we may now turn to the evidence. At the trial, Bundy testified that he was forced off the pavement, at a point about seventy feet from the bridge, by another car overtaking and passing. Prior to the trial, however, he had made statements to the effect that he was not forced off the road. The only other eyewitness, who was approaching from the opposite direction and saw Bundy go off

the road and strike the bridge, testified that he saw no car attempting to pass Bundy or even near him. Bundy stated that his car struck only the sidewalk, but the preponderance of evidence indicates that he first struck the last two guardposts ahead of the bridge and then struck both the parapet and the sidewalk. The guardposts and cables showed evidence of damage, and the parapet wall was chipped and scratched. Further, the right-hand door was torn off the car and hurled down the west embankment of the creek, and the entire right side of the car was heavily damaged. He testified that his speed was between forty-five and fifty miles per hour, although he knew of the thirty-mile speed limit, but the totally demolished car and its 150 foot upside down skid strongly suggest a much greater speed. Bundy was familiar with the road and knew of the existence of the bridge. The highway and the bridge were well lighted and the end of the sidewalk was marked with alternating yellow and black stripes. When he went off the road, he made no attempt either to apply his brakes or to slacken his speed. The conclusion is inescapable that Bundy was negligent in operating his car at excessive speed, in leaving the pavement without good reason, in failing to slow his car, and, generally, in failing to observe what he was about.

In the light of the foregoing, the court has reached the conclusion that the negligent conduct of Bundy rather than any defect in the construction of the bridge was the proximate cause of the accident. It is satisfied that even if the sidewalk had not existed, an accident would still have occurred, since the car struck the guardrail and the parapet, which were too far removed from the pavement to be considered improper obstructions of the shoulder, as well as the walk. The existence of the walk may have aggravated the accident, but it did not cause it. Whether, therefore, the State was negligent in so constructing and locating the sidewalk is an issue which need not be decided in this case.

The situation is in many respects similar to that in *Shaw* v. *State of New York* (196 Misc. 792) where this court denied recovery to a passenger, who was not contributorily negligent, on the ground that the negligent conduct of the driver was the direct cause of the accident, entirely separate from any negligence on the part of the State in the maintenance of the highway shoulder, even though under other circumstances such shoulder might constitute an unreasonably dangerous condition. As was said in *Jefson* v. *Crosstown St. Ry. Co.* (72 Misc. 103, 107): " The fact that the defendant created a nuisance in the highway

does not make it liable to one who, in a reckless and unreasonable use of the highway, is injured by the nuisance." In that case the defendant, who threw a bundle of papers into the street was held not liable to one who struck the bundle while operating at excessive speed. The principles are further discussed in *Gilbert* v. *State of New York* (56 N. Y. S. 2d 232) and in an annotation in 82 A. L. R. 294 entitled "Excessive speed of automobile as affecting question whether excavation or other defect in highway is the proximate cause of accident."

Like results follow in other jurisdictions. In *Mattucci* v. *Ohio Edison Co.* (79 Ohio App. 367) the excessive speed of the operator of a vehicle, which left the road and struck a pole located between the curb and the sidewalk was held to be the proximate cause of the accident rather than the existence of the pole. Decisions to the same effect are found in *Gulfport & Mississippi Coast Traction Co.* v. *Manuel* (123 Miss. 266) and in a line of cases cited and discussed in *Kline* v. *Moyer* (325 Pa. 357).

It follows that in the present case there can be no recovery against the State. It is therefore unnecessary to decide whether the Miller girls were guilty of any contributory negligence in riding in a location in the car from which escape in an emergency would have been virtually impossible, and with a driver who was practically a total stranger to them. The claims are therefore dismissed.

Let judgment be entered accordingly.