Russell G. Hunt, J.
The claim herein seeks the recovery of damages arising from the death of Richard Suligowski as the result of an accident on June 5, 1953, at about 12:30 a.m., due to the skidding of his car on a wet highway and its collision with the east end of the southerly abutment of a bridge in the Village of Bloomingburg on State Highway Route No. 17, Orange County, at or near the line with Sullivan County.
The deceased was alone at the time and there was no direct proof as to what caused the accident, consequently, the cause of action depends upon circumstantial evidence which may, of course, be sufficient (Boyce Motor Lines v. State of New York, 280 App. Div. 693, affd. 306 N. Y. 801). “ [I]n a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence ” (Andersen v. Bee Line, Inc., 1 N Y 2d 169, 172), but, 1 ‘ before that rule comes into play there must be * * *
a showing of facts from which negligence may be inferred ’ ’ (Wank v. Ambrosino, 307 N. Y. 321, 323, 324), and, “ speculation is not a substitute for proof when it is sought to attribute blame for an unexplained accident ” (Kelly v. Otis Elevator Co. 283 App. Div. 363, 367, affd. 308 N. Y. 805). The defendant, however, has the burden of proving contributory negligence in a death action (Flynn v. Long Is. R. R. Co., 289 N. Y. 283, 285).
On behalf of claimant, Exhibits 20 and 24 were introduced in evidence without objection. The first is a State Department of Public Works report of the accident and the second is a card report of the accident prepared by the State Bureau of Motor Vehicles and forwarded to the State Traffic Commission which in turn sent it to the local district office of the State Department of Public Works at Binghamton. Exhibit 20 states that the “ deceased was operating vehicle, proceeding westerly at an unknown rate of speed. Apparently applied brakes for curve, skidded completely around, lost control and crashed into bridge girder with left side of vehicle”; it was dark, raining and the highway surface was wet. Exhibit 24 recites that the accident happened as follows, ‘ ‘ driver apparently applied brakes at a curve approaching bridge and skidded around striking the railing”; it was dark, raining and the road was wet.
Since “ the mere happening of an accident is not evidence of negligence ” (Pliilpot v. Conrad, 282 App. Div. 1095, 1096), and, negligence cannot be inferred from the fact that the car skidded *587 (Coffey v. State of New York, 276 App. Div. 1049, motion for leave to appeal denied 301 N. Y. 813; Wesley v. State of New York, 272 App. Div. 990), the claimant sought to establish that the accident was due to a negligently banked or super-elevated curve which was made more dangerous when wet as evidenced by a large number of skidding accidents in wet weather, and, of which condition, the State should have given warning by erecting a sign that the pavement was slippery when wet.
There is no doubt that the State has the duty to erect proper and adequate signs, and, for a failure, it can be held liable (Hicks v. State of New York, 4 N Y 2d 1), and, as well, it is the State’s duty to construct and maintain its highways in a reasonably safe condition, but, a ‘ ‘ highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely ” (Boyce Motor Lines v. State of New York, 280 App. Div. 693, supra).
On the evening of June 4, the deceased had attended a theatre in Ellenville with a friend, Miss Patricia Stevens, whose home was in Middletown. After the theatre they had driven back to the latter place where the deceased consumed one or two glasses of beer in a restaurant followed by one or two cups of coffee at Miss Stevens’ home. He left there about 11:30 p.m., in a heavy rain for the return trip of 13 miles to Wurtshoro, and, it was incumbent upon him to maintain a vigilant lookout, for under the weather conditions then prevailing there was an element of hazard which was obvious and reliance could not be placed on the presumption of the safety of the highway (MacFarlane v. City of Niagara Falls, 247 N. Y. 340).
The deceased was 23 years of age and had resided and worked as an automobile mechanic in Wurtsboro for about eight months and had been keeping company with Miss Stevens for about three months prior to the accident and during that time he had called upon her about twice a week and invariably they had driven back to Wurtsboro, and, beyond, over Route No. 17. There is no doubt that he was familiar with the highway. It was, at the time, the principal means of access to the lower Oatskill Mountain resort areas from the New York and New Jersey metropolitan area and was heavily travelled; it passed through the section called the “ transportation packed Ramapo Valley” (David H. Beetle, “ The New York Citizen ”, p. 348 [1955, New York, Elsevier Press]; see, too, Boyce Motor Lines v. State of New York, supra, p. 697).
The approach to the bridge was an asphaltic concrete surfaced highway, 40 feet wide, on a descending grade of 4% and a curve to the west having a radius of 1,042 ft.; the beginning *588 of the curve was about 700 feet east of the bridge. From this point westward to the bridge, and, beyond, the highway had been resurfaced during 1951 and 1952 and completed by June 13, 1952. At that time, and, as a part of the work of the contract, the curve had been banked and super-elevated. After the accident herein and in August, 1953 additional work was done on the curve and the super-elevation was increased, but, this is not evidence on the issue of negligence (Getty v. Town of Hamlin, 127 N. Y. 636); it may, however, be considered on the question of the existence of a dangerous condition (Laitenberger v. State of New York, 57 N. Y. S. 2d 418; 190 Misc. 633). Near the beginning of the curve, where the asphaltic highway began, and, to the right along the north side of the highway, there was a sign “ Junction — N. Y. 17K ”, and, just beyond, and, westerly, there began a triple white line along the north edge of the paved portion of the highway and this ran to the east side of the bridge; the pavement was otherwise marked with white lines indicating traffic lanes and places for ‘ ‘ passing ” and “ no passing ”. Approximately 100 feet westerly of the beginning of the curve, on the north shoulder, there were two additional signs on a metal post; one was a curve or turn sign showing a highway branching oft to the right with a second branch going to the left, and, below this sign, there was another which was marked “ 30 M.P.H.”, and, this was the village speed limit. The branch to the right was an access road to Route No. 17K to the north. Route No. 17 continued on the left branch in a westerly direction. At the junction there were additional signs pointing to the principal resort areas on both highways, and, a large arrow pointed west and indicated a turn or curve. The deceased ‘ ‘ was bound to see what, by the proper use of his senses, he might have seen ” (Casey v. State of New York, 191 Misc. 95, 99, affd. 273 App. Div. 1048; Hicks v. State of New York, 4 N Y 2d 1, supra). At or near the westerly line of the intersection of these two roads, and, about 200 feet west of the junction and speed signs, there were skid marks in the northerly half of the pavement and they abruptly turned from a westerly direction to a southerly one and ended at the easterly end of the south bridge abutment. The first person who arrived at the scene of the accident was attracted by the sound of the automobile striking the abutment and he found the deceased unconscious on the pavement and he so remained until his death. The witness did not see the events preceding the noise of the collision. He identified skid marks on the highway as those made by the wheels of the deceased’s car. The length of the marks was not disclosed in the record, but, the photo *589 graph thereof shows that they were short and abruptly terminated at the bridge abutment. A reasonable hypothesis is that the brakes were applied with force sufficiently great as to cause the automobile to turn southerly and suddenly at a 90-degree angle from its forward westerly motion and that it was stopped by the abutment. This, however, does not coincide wit! claimant’s theory.
Claimant’s engineering expert inspected the highway a few days before the trial herein and almost five years after the accident. He made measurements at the beginning and end of the present curve, but, not between these points, and, from computations he made, after making allowances for the highway work done after the accident, he gave it as his opinion that the curve was improperly super-elevated for speeds of 30 and 35 miles per hour, and, over, and that an automobile traveling west at such speeds around the curve would go off the north side of the highway. The fact is, however, the deceased’s car went to the opposite side of the highway. At best, the engineer’s testimony is merely the expression of “an opinion that the curve was dangerous and might cause an accident. This is insufficient to fasten liability on the State where other causes are equally plausible” (Boyce Motor Lines v. State of New York, supra, p. 697). When an automobile swerves and ‘ ‘ leaves the road for no definitely assignable reason, it is altogether possible that the accident was due to either of several causes * * *. In all such cases the balance of probabilities between causes which entail liability and others which do not is equal enough so that an inference of fact which entails liability is the result of mere speculation” (Tortora v. State of New York, 269 N. Y. 167, 170).
The Ball Bank Indicator test on a dry road (see Manual of Uniform Traffic Control Devices, State Traffic Comm., p. 78) made by the State shortly after the accident, that is, on June 15, 1953, indicated the safe speed for the curve was 50 miles per hour.
The claimant called a number of witnesses to testify respecting the frequency of accidents on the easterly approach to the bridge allegedly the result of a pavement which became wet and slippery due to rain and mere slippery than normal. While there were general statements made that skidding accidents occurred in wet weather, not a single witness could give eye witness testimony of any accident, except one, and, that one occurred subsequent to the accident herein and on a dry pavement. A State Trooper testified that Route No. 17, in general, was slippery when wet and accidents due to skidding had *590 occurred, nevertheless, he had not seen any accidents due to skidding and he was unable to give the facts relating to any such accident. No car skidded while he was at the scene of the accident herein on June 5, 1953. The highway was very heavily travelled, he testified. A nearby gasoline station attendant gave testimony, no stronger than suspicion, that a number of accidents had occurred due to skidding on the wet pavement, but, he had no personal knowledge of any of them; the pavement where the accident occurred was not more slippery, he testified, than the concrete highway to the east and south of the bridge. The rule relative to the “ slippery when wet ” sign (Manual of Uniform Traffic Control Devices, State Traffic Comm., p. 63) confines its use to pavements “which become more slippery than normal pavement when wet ’ ’ and, its use, the rule states, “ should be kept to an absolute minimum ”. Under the facts herein, the absence of the sign had no bearing on the happening of the accident.
The evidence relative to other accidents for the purpose of establishing a dangerous condition was vague, indefinite, similarity of conditions was not shown and there was no proof of. the cause thereof, hence, no finding can be made that the highway was so dangerous “ that the only reasonable inference to be drawn *' * * as to the proximate cause of the accident was negligence on the part, of the State (Boyce Motor Lines v. State of New York, supra, p. 698)
The evidence was insufficient to support an inference that deceased’s automobile was caused to skid because of an improperly constructed or maintained highway or because of insufficient or inadequate traffic signs or for any other cause for which the State was responsible. The claimant has failed to establish by a fair preponderance of the evidence that the negligence of the State was a proximate cause of the accident and the claim must be dismissed.
This constitutes the decision herein pursuant to section 440 of the Civil Practice Act.
Let judgment be entered accordingly.