Alexander Del Giorno, J.
These are claims to recover damages for personal injuries sustained by claimants as a result of the alleged negligence of the State. The claimant Howard W. Naulty seeks also to recover additional damages for the loss of the services of his wife, Melba Naulty.
On November 2, 1957, at about 7:00 a.m., claimants left their home in East Aurora, New York, to attend a meeting of the board of trustees of Keuka College in Keuka Park, New York, of which board claimant Howard W. Naulty was a member. The latter drove his automobile, a 1957 four-door Oldsmobile sedan, in a general easterly direction on Route 20-A from East Aurora to Honeoye, New York. The day was cloudy, and there were damp spots on the roads which were in the process of drying. When they arrived at Honeoye, the claimant Howard W. Naulty pulled the car off the road. After a few minutes’ rest, his wife took over the wheel, her husband remaining in the front seat, beside her, rewriting some notes for an address to be delivered by him before the board of trustees.
Mr. Naulty testified that his wife then drove the automobile over the said highway, with which she was unfamiliar, and which is a two-lane highway approximately 16 feet in width, to a point approximately 3.4 miles east of Honeoye. She was proceeding at a speed of about 40 miles per hour. At that point Hiere is a descent in the grade of the road, a solid white line dividing the highway in the center. Just east of a left turn in *78 the highway, and past the turn, the right wheels of the automobile went off the paved portion of the highway and onto the soft shoulder. In an attempt at recovery by the driver, the front wheels took hold of the edge of the concrete, the car lurching to the left-hand side of the road and then back to the right-hand side of the road. At that time, the car went off the road completely, proceeded across a ditch which was three to four feet wide and into a field. It then turned to the left at an angle of 90 degrees, skidding sideways until the right wheels struck a small drainage ditch. The car rolled over, making one full revolution, and came to rest on its wheels. The drainage ditch was almost at right angles to the road and about 100 feet from where the car left the road. At the place in the road where the accident occurred, there were damp spots and dry spots on the roadway, and the surface of the fields and adjacent grounds was still muddy. The witness inspected the car immediately after the accident, and, one week later, the car being in the same condition, took a photograph of the car. After the accident, neither claimant was unconscious. The witness was able to get out of the car. His wife, who had been pressed against him through the roll-over, slid out of the car through the opened right door, ending up in a sitting position. Although prior to the time the car went off the road, the witness had been writing, he did feel the difference of traction and observed his wife’s handling of the car. She turned the wheel to the left and was thrown to the right side of the car. Her hands stayed on the wheel.
After the occurrence of the accident, some people from a house immediately across the road came to the scene. His wife was not moved, and an ambulance was called. Both claimants were taken to the Frederick Ferris Thompson Hospital in Canandaigua.
On November 9, 1957, the witness measured the shoulder of the road, finding that the distance from the rut in the shoulder to the top of the pavement, at the point where the car returned to the road was three and one-half inches, and at a point farther away, two inches.
On July 17, 1958, with his attorney present, the witness took photographs of the highway looking east. (Claimants’ Exhibits 11, 12, 13, approaches to the turn; Exhibit 14, site looking back from east to west; Exhibit 15, point 400 feet west of the crest in the hill, looking east.)
On November 9,1957, claimant took photographs of the scene. (Claimants’ Exhibit 16, southerly lane and the edge of the road, looking from west to east, marker 108; Exhibit 17, southerly *79 side of road, showing broken concrete subsurface under asphalt; Exhibit 18, southerly lane of highway, indicating groove or depression; Exhibit 19, from west to east, showing scene of accident from distance, markings indicating that the car travelled in the form of an S, starting from top to bottom, then a long spindle at the end of the S, going into the drainage ditch; Exhibits 20, 21, looking north and showing the height of the shoulder below the pavement; Exhibit 22, southerly side looking northeast, where the car left the road; Exhibit 23, southerly side of pavement, ink marking where tire marks were found immediately after the accident; Exhibit 24, point where the car returned to road; Exhibit 26, indicating relative height of shoulder to pavement.)
Claimant Howard W. Naulty did not require the services of a physician and was not hospitalized. Immediately after the accident, he had an ache in his head and in his back. That evening he returned home and went to bed, where he remained the following day. On the day after that, he resumed his normal duties. For several weeks thereafter, anything that required the bending of his back was painful.
On cross-examination, the witness testified that he had been on this road many times, and, while proceeding at 50 miles per hour, had never gone off the road.
Claimant Melba Naulty testified that she is now 46 years of age, that she is a registered nurse, and that she operated at the time of the accident and now operates a nursing home accommodating 16 patients. As she was driving along the road and approaching the turn, which was the first time she had driven on this road, she was unable to see the turn, and saw no signs on the road. As she came to the crest of the road, there was a turn to the left. In relating how the accident happened, she substantiated the testimony of her husband. She testified that she did not apply her brakes when the car went off the road, but did take her foot off the gas pedal. She stated that as a result of the accident, she was obliged to discontinue a great part of her work in the nursing home, and that she was obliged to undertake payment to nurses employed by her for extra hours worked by them in the sum of $250 in 1957, $2,000 in 1958 and $2,100 in 1959.
On cross-examination, she testified that just prior to the accident she had been proceeding at a speed of 40 miles per hour; that she did not see the turn in the road until she had reached a point 15 feet ahead of the turn and had not sufficient time within which to negotiate the turn. She had driven for one year prior to the date of the accident. She conceded that *80 she accidentally went off the road, that when she went off the road onto the shoulder she did nothing except to proceed for a time trying to get back upon the pavement. As to the motor vehicle accident report, she testified that although she signed it, she did not "write it. In this report it was stated that in entering the field where it overturned, the car struck and knocked down two wooden fence posts and wire fence, and proceeded 100 feet.
Mr. Joseph Martin, called as a witness on behalf of claimants, testified that he is a resident engineer of the State Department of Public Works, Ontario County. He stated that the distance between markers 105 and 106 and 107 and 108 on Route 20-A is 100 feet. The distance between stations 103 and 108 is 500 feet. The elevation at the top of the hill, near marker 106 is 13.45 feet. The angle of the road, at station 106+27 is 27 feet to the east, and is 7 degrees 12 minutes to the left. Between markers 106 and 108, the percentage of the grade or slope of the road is minus 6%, indicating a down grade. The angle of direction curves first and then the slope. The paved portion of the highway is 16 feet. Grading work was done near the shoulder on October 1,1957 and the shoulder was repaired. The witness maintained that claimants’ Exhibits 21-25, 30 and 31, taken on November 9,1957, showing the shoulder of the highway on the south side where the car first left the road, was not a true representation of the scene as he saw it on November 4, 1957, two days after the accident, and that on November 4, 1957, the shoulder was not so low as the picture indicated. After inspecting the scene, the witness did not write a report, but called the Sheriff’s office and was informed that a deputy ivas at the scene. He knew of no previous accidents at the scene.
On cross-examination, the witness testified that there are two winding road signs on the highway. He stated that one sign is two miles west of the scene of the accident, but he could not give the location of the other sign. He stated that rain can have an effect on shouldering and drop-offs. No complaints were ever received as to the condition of the highway at the scene of the accident. A week after the grading work had been performed, he inspected it and found that good maintenance prevailed and that the grader had brought the gravel back to the edge of the pavement. On November 4, 1957, the road was in a safe condition; gravel had not been washed away from the shoulder to the edge of the paved portion of the highway; the shoulder was between 1 inch and 1% inches lower than the edge of the pavement and not 4% inches to 6 inches on November 2 *81 as claimants allege. He stated that the road is a winding road, having a rolling character.
At this time, a motion by claimant Melba Naulty to amend the claim, increasing the amount of damages from $20,000 to $40,000 was granted.
May M. Ward testified that at the time of the accident she was in a field milking cows. She first saw the car as it crossed the road; then it veered, coming back across the road and into the field. She ran to the scene and saw claimant Melba Naulty sliding out of the car, her husband being already out of the car. Although it had rained previously, it was only damp at that time. She called the Sheriff and later saw an ambulance come, but not the Sheriff. After the ambulance left, she examined the highway. She stated that claimants’ Exhibit 30 showed the road as it was that day; that claimants ’ Exhibits 31 and 32 are a fair representation of the scene. She testified that cars had gone off the road quite a few times, and that within three months prior to this accident, there had been another accident.
On cross-examination, she stated that work had been performed by the State on October 1, 1957. She stated that the road for some distance is all downhill, the steep portion extending for 100 feet to 125 feet. The driver of the car was halfway down this portion when the car crossed the road. On State’s Exhibit A she marked her location and the course of the car. She testified that during her residence there for 20 years she had seen 10 or 20 cars leave the road. She never made any complaint to the Department of Public Works.
George Ward, on behalf of claimant, testified that he is the husband of May Ward; that he did not see the accident, but inspected the road after the occurrence and saw a drop-off in the shoulder, which often occurs after a rainfall. He said there was no winding road sign on the road on the date of the accident, but stated there is a sign now, about one fifth of a mile away, indicating Route 31, and that two miles away, on Route 20, for traffic going east, there is a winding road sign.
Dr. Charles J. Bobeck testified that on November 2, 1957, he examined claimant Melba Naulty at the hospital, at which time she gave him a history of the accident. She complained of severe pain in her mid-lower back behind her chest and some pain in the rib cage and pain on the top of her head. He found a fairly large hematoma of the right occipital region of the scalp about 4 to 5 cm. in diameter, moderate tenderness upon palpation over the lower ribs anteriorly and posteriorly, marked tenderness over the lower dorsal spine particularly over about *82 D7 and D8. X rays revealed a compression fracture of D7 with no encroachment upon the spinal canal or spinal cord and possibly a fracture of the right ninth rib. She was placed on her abdomen on a sling placed across the hospital bed. The sling was raised and she was placed in a hyperextension position; plaster body spica was applied from just above the hips to above the shoulders with plaster around the lower part of the neck and shoulders. While in the hospital she suffered back and abdominal pain due to the fractured vertebra, plus nausea. On November 14,1957, she was discharged from the hospital. The witness next saw her on January 11, 1958, at which time he removed the cast. Her back was still weak and sore; he re-examined her on February 8, 1958 and May 10, 1958, at which time she still suffered back discomfort. He saw her finally on February 10, 1960, the trial date, his examination revealing tenderness over the dorsal vertebra, but not as much as previously; she complains of weakness there even though able to flex to a 90-degree movement. The doctor testified that the injury to the seventh dorsal vertebra is of a permanent nature. The total bill of the hospital for the claimant Melba Naulty was $277.75, her doctor’s bill $535; the doctor’s bill for examination of her husband was $15.
At the close of claimants’ case, the State moved for dismissal upon the ground (1) that claimants failed to establish an emergency usage of the shoulder, (2) that claimants are not free from contributory negligence and (3) that there was no notice to the State of the existence of any dangerous condition.
Allen F. Johnston, testifying on behalf of the State, stated that on the date of the accident he was a Deputy Sheriff of Ontario County; that upon receiving a message of the accident, he went to the scene, from which the ambulance had already departed; that he spoke to Howard W. Naulty at the hospital and made a report based upon the information given to him by Naulty. This report indicates that the weather was cloudy and that the surface of the road was wet. Under the heading ‘ ‘ give clear account of accident ” the report stated: “ Car proceeding on rte. #20-A and when driver came over hill she meant to slow down by hitting brakes and instead stepped on the gas and car went into skid and left road going into field. Skid marks of 234 feet.”
On cross-examination the witness stated that he took Mr. Naulty to the hospital and obtained some of the information from him at that time. The 234 foot skid marks, which he obtained by pacing, were on the right side of the road, and a great part of them on the shoulder.
*83 William N. Babcock, a safety engineer for the State in the Rochester area, testified that State’s Exhibit A, taken on July 9, 1958, shows a view west of the crest of the road. On February 10, 1960, accompanied by another State employee, he made a Ball Bank test. Making three east runs on the road, at 50 miles per hour, the indicator did not go over 4, showing that 50 miles per hour is a safe speed and that 40 miles per hour is a safe speed even on a wet road. The parties agreed that the weather on the date of this test was very similar to that on the date of the accident.
On cross-examination he testified that when making the test he stayed on the right side of the white line in the road. He stated that there is one winding road sign just west of East Honeoye Lake Road, another one three miles from the scene of the accident, the next 200 feet or 300 feet east of the first sign and another one about 2,000 feet west of the village.
Mr. Martin, recalled by the State, testified that the winding road sign on highway 20-A, going east, 2,000 feet west of the scene to which he had previously testified, was there at the time of the accident.
Marcus Levinson, a supervisor of survey parties for the Department of Public Works, who accompanied Mr. Babcock when the Ball Bank test was made, substantiated the latter’s testimony.
The State then rested, renewing its motions for dismissal.
On rebuttal, claimant Howard W. Naulty testified that the first time he saw the Sheriff was in his wife’s bedroom at the hospital; that at that time, the Sheriff asked for Mrs. Naulty’s license number and driver’s license, which he gave to him. The Sheriff then told him where his car was. The witness then stated that that was the entire conversation with the Sheriff. He testified that on July 17, 1958, accompanied by his attorney, he made a speedometer test of distances on the road, proceeding easterly on Route 20-A; that from a marker in Honeoye the first winding road sign was 2.3 miles away; that there was no sign between there and the village; that the total distance from the center of Honeoye to the point of the accident was 3.3 miles. On cross-examination, he stated that he had proceeded along the road on many occasions at 50 miles per hour and had never gone off the road.
Mrs. Naulty testified that her husband accompanied her in the ambulance from the scene of the accident to the hospital. She stated that the motor vehicle report (State’s Exhibit B) was signed by her,- but that it was written by her insurance broker, She denied that she ever made any statement to the *84 Sheriff to the effect that she put her foot on the gas instead of the brakes.
The State moved to strike out State’s Exhibit B, which motion was denied.
At the close of the entire case, the State renewed its motions to dismiss, decision thereon being reserved.
The claimants .would predicate the liability of the State upon the failure of the State to provide them with sufficient notice of the fact that Route 20-A was a winding road, and in the existence of a drop-off from the paved portion of the highway to the shoulder.
Liability of the State must be based upon a breach of duty owed by the State to the claimant, defined by the risk to be perceived, resulting in injury to a claimant. There must be presented evidence that the cause of any injury sustained was improper construction or maintenance of a highway, or the existence of improper or inadequate traffic signs, or the existence of any other conditions for which the State was responsible. (Suligowski v. State of New York, 14 Misc 2d 585.) A highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely. (Boyce Motor Lines v. State of New York, 280 App. Div. 693, affd. 306 N. Y. 801.)
The court will consider first the question as to whether the traffic signs on the road were sufficient. The Manual of Uniform Traffic Control Devices (published by State Traffic Comm., as adopted in 1958), at pages 95 to 96, provides that a winding road sign shall be used 11 where there is a succession of three or more curves with short tangents, or without tangents, between them. It should be placed in advance of the beginning of the first curve in the series. It should be repeated every fourth or fifth curve where there are six or more such curves in series. ’ ’ The manual provides further that normally the sign will be confined to meandering, less important highways.
Claimant’s testimony was to the effect that there was a winding road sign 1.1 miles west of the scene of the accident; State’s testimony was that there was at least one winding road sign, which was 2,200 feet west of the crest of the hill.
The court finds that Route 20-A is a meandering road as opposed to a main road, that it is a comparatively short road, and that there was placed a winding road sign 2,200 feet west of the scene of the accident. The placing of this sign in the position 2,200 feet from the scene of the accident, without the presence of any intervening sign between the two points, was *85 sufficient compliance by the State with the provisions of the manual, and provided adequate warning to the reasonably careful driver.
No evidence has been presented by claimants of any negligence by the State in the construction or the maintenance of the highway, or of any defect in the paved portion of Eoute 20-A at the scene of the accident. Claimant Melba Naulty testified that she had been proceeding at 40 miles per hour, did not see the turn in the road until she reached a point 15 feet ahead of the turn, at which point she had not sufficient time to turn. She conceded that she accidentally went off the road. She did not apply her brakes when the car went off the road, although she stated she took her foot off the gas pedal, proceeding nevertheless to get off the shoulder and onto the pavement. No evidence was presented either by Melba or Howard W. Naulty that the failure on the part of Melba to negotiate the curve was caused by a dangerous condition. Her going off the road could have been due to several causes other than negligence on the part of the State. Claimant Howard W. Naulty testified that on many occasions he had proceeded along this road at 50 miles per hour and had never gone off the road. The State introduced evidence that a Ball Bank test indicated that 50 miles per hour was a safe speed and that a speed of 40 miles per hour would have been safe even on a wet road. It has been held that1 ‘ When an automobile swerves and leaves the road for no definitely assignable reason, it is altogether possible that the accident was due to either or several causes * * * In all such cases the balance of probabilities between causes which entail liability and others which do not is equal enough so that an inference of fact which entails liability is the result of mere speculation.” (Tortora v. State of New York, 269 N. Y. 167, 170.)
Thus there was shown no negligent act of the State which was the proximate cause of the car’s going off the highway and onto the shoulder.
It would seem that claimants are relying upon the principle that the shoulder of the highway must be maintained in a reasonably safe condition for use when the occasion requires. In the case of Gilly v. State of New York (202 Misc. 837) a driver of a car had been negotiating a curve in the road. While so doing, the right rear wheel of his automobile dropped off the asphalt pavement of the road onto the shoulder, which was depressed from the pavement and which was composed of soft material. As a result, he lost control of his car, which swerved to the opposite side of the road and into a large stone. The condition *86 of traffic in either direction and the condition of the highway and the surrounding terrain were not such as to cause or require claimant to leave the pavement. No traffic in either direction intervened to impel him to encroach upon the shoulder of the road. The court held that: ‘ ‘ claimants ’ own inability to properly control his vehicle along this highway, with which he was familiar, brought about the untoward consequence.
“ The rule to be applied here was aptly stated by Presiding Judge Louitsberry of this court, in Miller v. State of New York (201 Misc. 859, 861): ‘ the claimants are relying on the principle that the shoulder of the highway must be maintained in reasonably safe condition for use when occasion requires. Such principle is well established, of course (Taylor v. State of New York, 288 N. Y. 542; Goodwin v. State of New York, 274 App. Div. 824, affd. 298 N. Y. 873; Sher v. State of New York, 194 Misc. 172), but it is subject to certain limitations and qualifications. In the first place it has been applied only when operation on the shoulder rather than on the pavement was a reasonable recourse by reason of some emergency or special condition. It has never been applied, so far as we can discover, where a driver negligently and without reasonable cause ran off the pavement. In the second place, the obstruction or dangerous condition complained of must have been the proximate cause, or at least one of the proximate causes, of the accident, a point to which we will advert later.’ ”
The court there found that the proximate cause of the accident was not the purported dangerous condition of the shoulder but solely the negligence of the claimant in the operation of his vehicle.
Although in the Gilly case, the driver was familiar with the road, and in the instant case the driver was not, the court finds that under the circumstances, such fact is of no consequence. Nor was there any unusual traffic condition existing.
When claimant Melba Naulty found that the right wheels of the car were upon the shoulder, she had not arrived there by reason of any emergency or special condition, but rather because of her operation of the vehicle on the highway in a negligent manner.
Indeed, when she first found herself on the shoulder, she should, in the exercise of ordinary care, have braked her car at once, and not have proceeded out again onto the paved road. The court finds that her failure to apply the brake constituted contributory negligence.
Evidence introduced as to the occurrence of other accidents, to establish a dangerous condition, was indefinite. Further, *87 there was no evidence that the conditions existing at the time of the occurrence of any other accidents were similar to the conditions existing in the instant case.
Claimants have failed to establish by a fair preponderance of the evidence that the negligence of the State was a proximate cause of the accident. The motions of the State to dismiss the claims are granted. The claims are dismissed. This constitutes the decision of the court pursuant to the provisions of section 440 of the Civil Practice Act. Let judgment be entered accordingly.