Nesta W. HIGH, widow of Robert M. High, Plaintiff-Below, Appellee, Cross-Appellant, and Cross-Appellee,

v.

The STATE HIGHWAY DEPARTMENT of the State of Delaware, and Eastern States Construction Company, Inc., a corporation of the State of Delaware, Defendants-Below, Appellees, Appellants, Cross-Appellees and Cross-Appellants,

v.

James A. WASHINGTON and Irving Chernekoff, t/a Installers Associates, Defendant-Below, Cross-Appellee and Cross-Appellant.

Supreme Court of Delaware.

April 6, 1973.

F. Alton Tybout, of Tybout, Redfearn & Schnee, Wilmington, for Nesta W. High.

Ben T. Castle and William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for State Highway Dept.

Roger Sanders and Walter P. McEvilly, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for Eastern States Constr. Co.

E. N. Carpenter, II, and A. M. Terrell, Jr. of Richards, Layton & Finger, Wilmington, for James A. Washington and Irving Chernekoff, t/a Installers Associates.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from a judgment entered on a jury's verdict in a wrongful death action brought under 10 Del.C. § 3702(b) by the widow of the deceased. The plaintiff appeals solely on the question of the amount of damages, and asks for a new trial on the issue of damages alone. All four defendants appeal generally. The State Highway Department and Eastern States Construction Company, Inc., the contractor on the job, appeal the imposition of any liability upon them. Irving Chernekoff, t/a Installers Associates, the owner of the truck involved in the accident, and James A. Washington, the driver of the truck, appeal on the basis of the alleged contributory negligence of the decedent.

We first take up the appeal of the defendants Washington and Chernekoff. Initially, we note a query as to how Washington can be an appellant since a judgment by default was taken against him below. We pass over this, however, since Chernekoff, the owner of the truck Washington was driving, is obviously a proper appellant. The jury returned a verdict to the effect that Chernekoff and Washington were 85% liable for the death of the plaintiff's decedent. One point only is raised, viz., that they were entitled to a directed verdict in light of what is described as undisputed evidence of plaintiff's decedent's negligence at the time of the accident. It is necessary to briefly state the facts relating to this contention.

The site of the accident resulting in the death of plaintiff's decedent was on a detour made necessary by reconstruction of the Governor Printz Boulevard north of Wilmington. At the time of the accident in question, the Governor Printz Boulevard, a dual two-lane highway, one lane going north and the other south, was under construction. This involved the closing off of a section of the southbound lane and the rerouting of southbound traffic over the grass dividing plot onto the northbound lane which, for a distance, was thereby made north and southbound traffic, each occupying and permitted to travel on a single lane of a former two-lane northbound highway. The north and southbound single-lane roadways were divided by a double yellow line which, under the traffic regulations of the State of Delaware, prohibit passing or crossing over those lines.

At the time of the accident, Washington was driving Chernekoff's truck north in the righthand lane of the detour. A large tanker truck in front of him suddenly stopped. Washington applied his brakes, causing his vehicle to swerve to his left. At the same time, plaintiff's decedent, proceeding southbound in the opposite lane of the detour, had just passed the tanker truck when his vehicle and the truck driven by Washington collided on, or approximately on, the dividing yellow line adjacent to the southbound lane.

These appellants contend that plaintiff's decedent was driving on approximately two and a half inches of this yellow dividing line in violation of 21 Del.C. § 4120(b), which requires that no driver shall drive on the "left side of any pavement stripping" designed to mark a no-passing zone throughout its length. Thus, say these appellants, the plaintiff's decedent was guilty of contributory negligence by reason of a violation of this statute, which prevents recovery by his widow since it was a proximate cause of the accident.

There were no independent eyewitnesses to the accident, itself. These appellants'

contention as to contributory negligence depends entirely upon the testimony of a State Trooper who investigated the accident and, from the circumstances available, attempted to reconstruct what happened. These appellants say that the Trooper's testimony is explicit to the effect that plaintiff's decedent was operating his automobile on the yellow line nearest the lane on which he was traveling southbound at the time of the accident.

The physical condition of the two vehicles after the accident indicated that the extreme left front of Chernekoff's truck struck the extreme left front of plaintiff's decedent's car in a head-on collision. Both vehicles traveled in the direction in which the truck had been traveling for some feet before coming to a stop. The officer also testified that the impact of the two vehicles coming together forced the left part of the front bumper on plaintiff's decedent's car down to the roadbed, and that it gouged a mark in the yellow line on the side of the southbound traffic lane approximately two and a half inches from the lane, itself. It is upon this circumstance that these appellants base their argument as to contributory negligence.

They say that the officer assumed the gouge mark in the yellow line to be the point of impact of the two vehicles, thus, demonstrating that plaintiff's decedent was driving on the yellow line at the time of the impact. It is true that at one point the Trooper stated that this was the point of impact, but it seems apparent that he must have been somewhat confused at the time because, in answer to several other questions, he stated quite clearly that the impact took place within the limits of the southbound lane, thus indicating that Chernekoff's truck had crossed the yellow line and struck the plaintiff's decedent's car. Furthermore, Washington, the driver of the truck, in a statement made to the officer following the accident, readily admitted that his truck crossed the double yellow line and struck plaintiff's decedent's car. He ascribed the reason for crossing the

line to a grabbing of his brakes which he had put on hard.

Furthermore, the paths of the two vehicles and their final resting place show that, following the impact, the plaintiff's decedent's car was driven back and rotated in a counter-clockwise manner. It seems to us that the jury could have believed that the bumper on plaintiff's decedent's car, having been knocked loose by the impact, and having been forced down, and the car commencing to turn in a counter-clockwise direction, placed part of the bumper over the yellow line, gouging out the mark noticed by the State Trooper. If the jury accepted this version, which was argued to it, then obviously plaintiff's decedent is guilty of no contributory negligence.

■ We think the point is entirely factual and, if there was any confusion in the testimony and evidence regarding the point of impact, it was the jury's duty to resolve that confusion, which it apparently did in favor of plaintiff's decedent. We are therefore of the opinion that the appeals docketed on behalf of Washington and Chernekoff must result in an affirmance of the judgment.

We turn now to the appeal docketed by the State Highway Department. The Department urges that error was committed by the refusal of the Trial Judge to grant its motion for summary judgment or its subsequent motion for a directed verdict in its favor, and also that error was committed by the Trial Judge in his instructions to the jury on the Highway Department's general duty of care.

It appears from the record that the general contractor, Eastern States, as required by its contract, prepared a plan for the detour in question prescribing the various precautions to be taken to protect the traveling public. This included such things as signs regulating speed, "do not pass", "detour", "slow", etc. Eastern States submitted the plan to the Highway Department for its approval. The Highway Depart-

ment considered the plan and suggested several revisions which were made by Eastern States, and the entire plan was then approved by the proper officials in the Highway Department.

The plan basically provided for a series of detour signs and barricades erected at each end of the detour; the painting of double yellow lines down the center of the northbound lane; the placing of "do not pass" signs; the placement of lawful speed limit signs of 35 m. p. h., and the placement of "advisory" speed signs of 25 m. p. h. interspersed along the detour route.

All of the experts who testified both for the plaintiff and for the defendants, stated that the traffic-routing plan ultimately approved by the Highway Department was prepared in accordance with usual and normal provisions for the installation of safeguards for the traveling public in accordance with the "Manual of Uniform Traffic Control Devices", used by the Highway Departments of most, if not all, of the States for this purpose. There is no doubt, apparently, that the traffic-routing plan actually put into effect on this detour was in accordance with nationally accepted standards.

The plaintiff's expert testified that, in his judgment, the Highway Department was negligent in following the designated procedures ordinarily and customarily followed for such detours. He urged that certain other steps should have been taken, viz., the placement of guardrails, the construction of a swing-around in the area where the accident took place, and the erection of more signs in the course of the detour to remind motorists constantly that they were in a detour area, and, finally, the erection of a sign advising of the imminent approach of the intersection near the scene of the accident.

On the other hand, the Highway Department contends that the traffic-routing plan approved by it was the product of the exercise of judgment or discretion by its trained personnel. This being so, it is argued that governmental agencies have a protected area of decision-making in which their discretionary conclusions do not expose them to liability in tort.

■ It is, of course, axiomatic that the Highway Department, in making these decisions, must do so in good faith and by the exercise of good judgment. It may not use its discretionary field of activity to justify the omission of obvious safeguards for the protection of the public.

The Highway Department cites Hughes v. County of Burlington, 99 N.J.Super. 405, 240 A.2d 177 (1968), an automobile accident negligence action in which it was contended that the county was negligent in failing to construct paved shoulders along a four-lane highway. The testimony of the traffic engineering experts for both sides was conflicting. It was held that, since the decision to omit paved shoulders was a discretionary decision, it fell within the area of nonactionable exercise of government discretion. To the same effect is Pelloat v. State, La.App., 198 So.2d 674 (1967).

This is apparently a question of first instance in this State. There is one reported decision which bears somewhat upon the problem. Hession v. Mayor, etc. of Wilmington, Del.Super., 27 A. 830 (1893). This was an action against the City as a result of flood damage to the plaintiff's property. The contention was that the City was negligent in designing and planning a sewer system. The Court, however, in instructing the jury, said:

"The making of such plans is a quasi judicial or discretionary power or duty. The execution of the plan,—that is, the actual building of the sewer,—when so made, is a ministerial duty. For any fault or defect in such plans, resulting in damage to the individual citizen, the city is not liable. For any fault or defect in carrying such plans into execution, the city is liable."

What we have before us is a traffic-flow scheme developed in accordance with the Uniform Manual on which highway engineers almost uniformly rely. Plaintiff's expert conceded in this case that the placement of these signs, barriers, and markings was in compliance with the Uniform Manual. He further recognized that the general area of highway control by the erection of signs and providing safety devices involved judgment on the part of the devisor of the plan.

All of the experts agree that the plan actually put into effect on the Governor Printz Boulevard at this location was in compliance with the Uniform Manual. This being so, it is argued, the imposition of any liability on the Highway Department is precluded. Naulty v. State, N.Y. Ct.Cl., 25 Misc.2d 76, 206 N.Y.S.2d 210 (1960).

We think it is clear that if there are two acceptable courses of action for the achievement of the same purpose, it is not negligence on the part of a defendant to pursue one rather than the other. This Court recognized this principle in Di Filippo v. Preston, Del.Super., 3 Storey 539, 173 A.2d 333 (1961). This was a medical malpractice case, and we held that the decision of the surgeon to follow one of two accepted surgical procedures could not be made the basis of a charge of negligence when the operation was unsuccessful. We stated:

"We think, therefore, that the plaintiffs failed to make a submissible issue of negligence for the jury and that, consequently, on this phase of the case the direction of a verdict for the defendant was proper."

To the same effect is Boston, C. C. & New York Canal Co. v. Seaboard Transportation Co., 1st Cir., 270 F. 525 (1921). We think, therefore, that it was error to refuse the Highway Department's motion for a directed verdict. We point out that this conclusion is not based upon any concept of the doctrine of sovereign immunity, which is specifically waived by 18 Del.C. § 6509. This conclusion is based solely upon our opinion that no issue of negligence was presented to be resolved by the jury as to the Highway Department. The judgment against the State Highway Department will therefore be reversed.

We turn now to the appeal of Eastern States, the contractor for the road construction. As we have pointed out, the traffic-flow plan was initially originated by Eastern States, as it was required to do by its contract, and it ultimately was revised and approved by the Highway Department.

The conclusion we have reached with respect to the Highway Department's appeal would seem to be dispositive of the appeal of Eastern States if it, in fact, constructed the detour and erected the necessary safeguards and warning signs in accordance with the plan approved by the Highway Department. There is no evidence which we have found to indicate that the plan was not exactly followed by Eastern States. This means, therefore, that there has been no proof of negligence on the part of Eastern States which was a proximate cause of the injury. Therefore, the judgment against Eastern States will be reversed.

We turn now to the plaintiff's appeal on the issue of damages. This suit was filed by the widow of the decedent who died as a result of the automobile accident. At trial, the plaintiff called an expert in economic forecasting to project, first, the probable future income of the decedent during his working life and, second, the probable economic loss sustained by the plaintiff as a result of the death of the decedent. The expert so testified and reduced the plaintiff's loss to present value.

On cross-examination, the expert was asked whether the decedent, if he had lived, would have paid income taxes on the income forecast by the expert. There was an objection based on Abele v. Massi, Del.

Supr., 273 A.2d 260 (1970). The Trial Judge sustained the objection. The following morning at a conference between the Trial Judge and counsel in the case, the Court reversed its previous position and permitted cross-examination of the expert as to the effect of income taxes on the potential earnings of the decedent. Following this, over the continuing objection of the plaintiff, on cross-examination, the defendants explored the impact of possible future income taxes on the earnings of the decedent. Counsel for the plaintiff then felt forced to examine the economist concerning this subject which he had not previously introduced into the case.

The witness testified that the purpose of discounting forecast earnings to present value was to anticipate investment and the earnings of interest or other return on the investment so that, at some future point, the entire loss to the widow might be made up by combination of the amount of the judgment plus interest to the date of the loss. Thus, if future income taxes to be paid by the decedent were to be considered in determining the earnings of the decedent, those same income taxes would affect the earnings on the investments made in order to compensate the plaintiff for the total amount of her loss in future years. The witness noted that if such income taxes were to be taken into account, it would be necessary for the award to be in a greater amount than the discounted award he had calculated. He stated that there was no way by which the necessary amount could be forecast.

This Court has had before it related questions. In State Highway v. Buzzuto, Del.Supr., 264 A.2d 347 (1970), we held that the jury should be instructed that there would be no income tax paid by a successful plaintiff on an award received in the litigation.

In Abele v. Massi, supra, the suit was by a surviving spouse for damages resulting from the death of the other spouse. An economist was called as a witness to project the future wages of the deceased wife, and to discount those wages to present value as a factor in determining the plaintiff's loss. In that case, as before us in the present case, the defendant raised the question of the impact of income taxes on the calculations, and argued that the testimony of the economist was not admissible because it failed to take this into account. We rejected that argument. We held as a general proposition that the impact of income taxes on future earnings is not to be taken into account in the determination of an award for loss of earnings. In the course of the Opinion, we stated that, "to try to determine the income tax on projected future earnings is to engage in a most speculative activity. There are no firm guidelines to follow. Idealism must therefore give way to practicality."

In Gushen v. Penn Central Transp. Co., Del.Supr., 280 A.2d 708 (1971), we pointed out that in the *Abele* case the question was presented in a different context, but, in a case squarely presenting the point, the same reasons for excluding consideration of income taxes applied. We stated that, "[t]he matter goes too far into the field of speculation and conjecture to serve as a practical aid in an area which already contains enough guesswork."

See, also, Petition of Oskar Tiedemann and Co., D.C.Del., 236 F.Supp. 895 (1964) modified on other grounds, 3rd Cir., 367 F.2d 498 (1966); cert. denied, Black v. United States, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967), to the same effect.

■■ We think the three cited cases have committed Delaware to the rule that, in determining loss by wrongful death, the possible impact of future income taxes on future earnings may not be considered by the jury. It follows, therefore, that the permitted cross-examination of plaintiff's expert was improper and, also, that the refusal by the Trial Judge to instruct the jury upon this point was error.

Accordingly, the plaintiff's appeal will be allowed to the extent that there will be a remand for the purpose of a new trial on the issue of damages.

The judgments against the individual defendants, Washington and Chernekoff, will be affirmed. The judgments against the State Highway Department and Eastern States Construction Co., Inc. will be reversed. It follows, therefore, that the apportionment of liability made by the jury as between Washington, Chernekoff, Eastern States, and State Highway Department will be reversed, and the assessment of liability of 100% against the individual defendants be established.