# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JASON PATTON, | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )    C.A. No. N12C-01-177 CLS |
| 24/7 CABLE COMPANY, LLC, | ) |
|     Defendant/Third-Party Plaintiff, | ) |
| DANELLA LINE SERVICES COMPANY, INC., | ) |
|     Defendant/Third-Party Defendant/Fourth-Party Plaintiff, | ) |
| MELCAR, LTD., INC., MALEC CONSTRUCTION COMPANY, LLC, a Pennsylvania LLC, and SUSSEX PROTECTION SERVICE, LLC, | ) |
|     Defendants/Fourth-Party Defendants, | ) |
| 24/7 MID-ATLANTIC NETWORK, LLC, 24/7 FIBER NETWORK, LEVEL 3 COMMUNICATIONS, INC., and FIBERTECH NETWORKS, LLC, | ) |
|     Defendants, | ) |
|         v. | ) |
| DOUGLAS C. RILEY, | ) |
|     Third-Party Defendant. | ) |

## **ORDER**

On this 31st day of August, 2016, and upon Defendants Danella Line Services Company, Inc's ("Danella") and Fibertech Networks, LLC's ("Fibertech") (collectively, "Defendants") Motion for Summary Judgment Against

Plaintiff Jason Patton, it appears to the Court that:

1.    This is a negligence action brought by Plaintiff Jason Patton ("Plaintiff").  Plaintiff filed this negligence action against nine defendants, including Defendants, seeking recovery for injuries he sustained on June 10, 2011, resulting from a motor vehicle collision between Plaintiff and Douglas Riley ("Riley") in the vicinity of a construction site on Route 13 in New Castle, Delaware.  Plaintiff alleges that the collision was caused by the failure to close the crossover, or median break, connecting the northbound and southbound lanes of Route 13, as well as by the presence of construction lights and equipment in the median at the crossover.  Plaintiff asserts that Defendants are liable for his injuries, because they failed to implement reasonable safety precautions at the worksite, failed to warn of the danger they created, failed to protect the traveling public, and failed to comply with the construction permit issued by the Delaware Department of Transportation ("DelDot").

2.    The Parties have stipulated to the following facts:[1]  At all times relevant, Danella was hired as the general contractor to provide Fibertech with a conduit for fiber optic cable along a distance of Route 13 to connect to a splice box under the median of Route 13.  Fibertech obtained Permit No.

---

[1] *See* Stipulation of Fact (Trans. ID 58234718).

NC-072-MIS (the "Permit") in furtherance of this project. Danella subcontracted portions of the work to three subcontractors, who are also defendants, which include Melcar, Ltd., Inc., Sussex Protection Service, LLC, and Malec Construction Company, LLC. At approximately 9:15 pm on the evening of June 10, 2011, as work was being performed by Danella and several other contractors pursuant to the Permit, third-party defendant Riley drove his Dodge Durango with his wife and two sons on the median break, which had not been closed, from northbound Route 13 in an attempt to cross over the southbound lanes to reach a parking lot on the other side, and stopped at the stop sign before driving across. Plaintiff was driving his motorcycle on southbound Route 13 when the collision between him and Riley occurred. As a result of this collision, Plaintiff suffered injuries.

3.     On August 31, 2015, Defendants moved for summary judgment on Plaintiff's claims, arguing that there is no genuine issue of material fact that could prevent summary judgment on their behalf, because there is no evidence that Defendants breached any duty of care owed to Plaintiff or proximately caused the collision. Specifically, Defendants argue that, because they properly designed and executed the traffic control plan in accordance with the Delaware Manual on Uniform Traffic Control Devices ("MUTCD"), they were not negligent as a matter of law. Defendants further

argue that there is no evidence in the record that the construction obstructed Mr. Riley's view of the roadway and, thus, Plaintiff cannot establish causation.

4. Plaintiff opposes Defendants' Motion on the basis that Defendants had a non-delegable duty to protect the traveling public within the construction zone, which they breached by failing to comply with the Permit, failing to comply with Case 7 of the MUTCD, and failing to otherwise act reasonably under the circumstances. Plaintiff contends that, at the time of the collision and during the time the worksite was set up, Defendants were in violation of the Permit for having failed to notify the Delaware Department of Transportation of their plans to work on a Friday night and acted unreasonably by not closing the crossover or using a flagger, which created a danger to the traveling public. Further, Plaintiff argues that the Rileys' testimony undisputedly shows that the construction equipment and lights blocked Mr. Riley's vision, which proximately caused the collision.

5. On July 12, 2016, at the request of the Court, the Parties submitted supplemental memoranda to assist the Court in determining, *inter alia*, the issue of duty. Defendants recognize that they had a duty to act as a reasonable, prudent contractor in protecting the traveling public within the

construction zone. However, Defendants argue that they satisfied their duty by complying with the MUTCD, citing to *Hales v. English, et al.* for support. On the other hand, Plaintiff cites to *Thurmon v. Kaplin* in arguing that Defendants' common law duty also included an obligations above and beyond the minimal requirements imposed by the Permit and MUTCD.

6.   The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[2] The moving party bears the initial burden of showing that no material issues of fact are present.[3] Once such a showing is made, the burden shifts to the non-moving party to demonstrate that there are material issues of fact in dispute.[4] In considering a motion for summary judgment, the Court must view the record in a light most favorable to the non-moving party.[5] The Court will not grant summary judgment if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law.[6]

---

[2] Super. Ct. Civ. R. 56(c); *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).
[3] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[4] *Id.* at 681.
[5] *Burkhart*, 602 A.2d at 59.
[6] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *Phillip-Postle v. BJ Prods., Inc.*, 2006 WL 1720073, at *1 (Del. Super. Apr. 26, 2006).

5

7.      It is well-established that in order to maintain an action sounding in negligence that a plaintiff must demonstrate that (i) the defendant owed the plaintiff a duty of care; (ii) that the defendant breached that duty; and (iii) that the defendant's breach was the proximate cause of the plaintiff's injury.[7] If the plaintiff fails to makes out a prima facie case of negligence, the defendant is entitled to judgment as a matter of law.[8] A defendant owes the plaintiff a duty of care where the defendant was under a legal obligation to protect the plaintiff from the risk of harm which caused the plaintiff's injuries.[9] "[W]hether a duty exists is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined by the court."[10]

8.      As to the issue of duty *sub judice*, Defendants owed a duty to the traveling public, which includes Plaintiff, to act with reasonable care in providing the services necessary to ensure safe travel through the construction zone.[11] However, the issue of how a contractor might satisfy

---

[7] *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007) (citing *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001)).

[8] *Id.*

[9] *Id.*; *Thurmon v. Kaplin*, 1999 WL 1611327, at *2 (Del. Super. Mar. 25, 1999).

[10] *Id.* (citations omitted).

[11] *See Thurmon*, 1999 WL 1611327, at *3 (citing *Seitz v. A-Del Constr. Co.*, 1987 WL 16711, at *7 (Del. Super. Aug. 13, 1987)) ("Tilcon, as the general contractor, assumed the responsibility of

6

this duty of care is less clear. In *Thurmon v. Kaplin*, the plaintiff alleged that the defendants were negligent in failing to provide temporary striping in an area of roadway undergoing repaving, which negligence caused the plaintiff to collide with another vehicle when that vehicle turned right from a thru-lane across the unmarked turn lane in which the plaintiff was traveling.[12] The general contractor, who had contracted with DelDot to complete the road improvement project in accordance with the MUTCD, subcontracted with another company to actually paint the temporary striping on the roadway, and the record showed that the subcontractor took direction explicitly from DelDot and the general contractor as to when and where to paint the lane striping.[13] Ultimately, this Court found that, while the MUTCD did not impose any affirmative, independent duty on the contractor in control of the worksite to stripe the highway, summary judgment in favor of the general contractor was not appropriate under the circumstances in light of the general common law duty of reasonable care imposed on contractors to protect the public traveling through the area under construction.[14] In so holding, the Court explained in a footnote that:

---

providing services necessary for the protection of the traveling public within the construction zone.").

[12] *Id.* at *1.

[13] *Id.*

[14] *Id.* at *2-3.

"It could be that [the contractor] is entitled to rely on DelDOT's discretionary decisions pursuant to *High v. State Highway Dep't*, Del. Supr., 307 A.2d 799, 803-04 (1973) (holding that if the detour, warning signs and other safeguards were erected in accordance with the plan approved by the Highway Department, there is, as a matter of law, no proof of negligence on the party of the contractor). The record here, however, is incomplete as to what, if any, planning decisions were made regarding traffic flow during non-construction hours."[15]

9.      Fifteen years later, this Court was confronted with another negligence action involving a construction zone in *Hales v. English*, where the plaintiff alleged that the contractor's negligence in preparing the traffic control plan and in failing to properly execute it caused her vehicle to collide with another.[16] In granting summary judgment to the contractor, this Court held, as was recently affirmed by the Delaware Supreme Court, that "if a contractor is controlling traffic at a construction site pursuant to a DelDot-approved traffic control plan prepared in accordance with the [MUTCD], then [the contractor] cannot be held liable for an action in negligence provided that it was actually following the approved plan" simply because there might have been another way to control the traffic.[17] The Court reasoned that, because the "MUTCD is published by DelDot and is issued to prescribe uniform standards and specifications for all traffic control devices

---

[15] *Id.* at *3 n.6.

[16] 2014 WL 12059005, at *1 (Del. Super. Aug. 6, 2014), *aff'd sub nom. Hales v. Pennsy Supply, Inc.*, 115 A.3d 1215 (Del. 2015) (TABLE).

[17] *Id.* at *2 (citing *High v. State Highway Dep't*, 307 A.2d 799 (Del. 1979)).

8

in Delaware," it sets forth "the applicable standard by which [the contractor's] actions must be judged."[18] In so holding, the Court explicitly relied on *High v. State Highway Department*, which explicitly rejected the argument that the contractor should have controlled the traffic in a different manner.[19]

10. Plaintiff's argument that *Hales* is distinguishable simply for the fact that it involved a DelDot construction project, as opposed to a private construction project as here, is unpersuasive, because the issue of sovereign immunity was irrelevant to the Court's determination regarding the contractors' common law duty of care and, there as well as here, DelDot approved the traffic control plan that was designed and submitted to it by others.[20] Furthermore, a closer reading of *Thurmon*—especially footnote six of the opinion reproduced *supra*—suggests that *Thurmon* is partly distinguishable on the basis that it addressed allegations of negligence against a contractor for a collision that occurred during non-construction hours, the only allegations of negligence involved the lack of traffic controls,

---

[18] *Id.*

[19] *Id.*; *see High*, 307 A.2d at 804 ("We think it is clear that if there are two acceptable courses of action for the achievement of the same purpose, it is not negligence on the part of a defendant to pursue one rather than the other.").

[20] To be sure, summary judgment was actually granted to the State on the basis of the public duty doctrine and not statutory immunity, and this Court pointed out that, but for application of the public duty doctrine, the plaintiffs' claims against the State for its own alleged breach of duty and for the alleged negligence of the officer who was flagging traffic would have gone forward. *Id.* at *3-4.

and summary judgment was denied because the record failed to address whether or not the contractor was entitled to rely on DelDot-approved plans as in *High*, on which *Hales* was later decided.

11.    Therefore, to the extent Plaintiff alleges that Defendants were negligent in failing to maintain safe travel of the roadways through the construction site à la *Hales—i.e.*, by not complying with the MUTCD and not imposing additional safeguards—the applicable standard of care is set forth by the MUTCD, as required by the Permit.  However, to the extent Plaintiff alleges that Defendants were negligent in failing to appropriately supervise the construction site and its subcontractors who were working at the time of the collision, *Hales* is distinguishable and, thus, the applicable standard of care is that of a reasonable and prudent contractor under the circumstances as applied in *Thurmon*.[21]

12.    It is undisputed that the provisions of the Permit, which was issued to Fibertech by Delaware's Division of Maintenance and Operations, set forth certain requirements with which Defendants had a duty to comply under the circumstances.[22]  According to the plain language of the Permit, the

---

[21] *Cf. id.* at *4 (holding that if the public duty doctrine did not apply and, thus, the State did owe a duty of care to the plaintiffs, it would be responsible for the allegedly negligent actions of the officer who was directing traffic at the time of the collision).

[22] Danella undertook the same duty of care as Fibertech when it contracted with Fibertech, as general contractor, to perform the work required to complete Fibertech's cable project.  *See*

Permittee had a duty (1) to "[c]ontact Inspector prior to starting any work," (2) to "call the Division of Maintenance and Operations Permit Section . . . 24 hours prior to any installation on State rights-of-way, and (3) to implement traffic control "in accordance with Delaware Manual on Uniform Traffic Control Devices."[23] Therefore, Defendants contractually assumed these responsibilities. However, because there is conflicting testimony as to whether Defendants contacted DelDot prior to working and, as discussed more fully below, uncertainty as to which MUTCD case actually applies under the circumstances, the record contains disputed facts as to whether or not Defendants fully complied with these terms, which precludes summary judgment on this basis.

13. As to which MUTCD temporary traffic control "case" applies under the circumstances, the Parties' experts disagree. Therefore, summary judgment is also not appropriate on this basis. It follows, then, that Defendants' assertion that they fully complied with the applicable case must also go to the finder of fact, even where DelDot's testimony regarding compliance appears undisputed.[24]

---

Stipulation of Fact ¶ 2; Pl.'s Ans. Br., Exh. A (Master Agreement Between Fiber Technologies Construction Company, LLC and Danella) (Trans. ID 58320995).

[23] Ltr. to Court fr. Danella & Fibertech, Exh. B at 1 (Jul. 12, 2016) (Trans. ID 59264284).

[24] In fact, the Court notes that, while much argument has been exchanged as to what constitutes an "intersection" in relation to Note 13 of Case 3 and Note 14 of Case 7, both of which state, "When any road intersects the roadway on which work is being performed, additional traffic

11

14. Lastly, as to the issue of causation, the testimony of the Rileys, which both Parties cite for opposing propositions, does not "unequivocally" establish that their view of Route 13 southbound was unobstructed at the time of the collision, particularly where portions of it sound in hindsight. Plaintiff has presented other testimony from DelDot inspectors, which supports his argument that the backhoe was, in fact, blocking Mr. Riley's view of the Route 13 southbound.[25] As a result, the record contains disputed facts as to whether or not Defendants' alleged breaches of duty proximately caused the collision, which caused Plaintiff's injuries.

15. Therefore, because Plaintiff has pointed to evidence in the record that, when viewed in the light most favorable to Plaintiff, contradicts Defendants' assertion that on June 10, 2011, their actions were in full compliance with both the Permit and the relevant MUTCD specifications and raises material questions of fact as to whether Defendants actions' or inactions proximately caused the collision, summary judgment as to Plaintiff's claims against Defendants must be **DENIED**.

---

controls shall be erected as directed by the Chief Traffic Engineer or designee," neither Note even references an "intersection" and neither party has addressed the limiting language.

[25] Of course, Plaintiff has not established that merely using a backhoe in the median constitutes negligence, but, as previously discussed in relation to duty, the determination of whether such conduct was reasonable is a determination of fact for the jury.

16.     Accordingly, for the foregoing reasons, Defendants' Motion for Summary Judgment is hereby **DENIED**.

**IT IS SO ORDERED.**

/s/Calvin L. Scott
The Honorable Calvin L. Scott, Jr.

cc:  Prothonotary

13