SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. HENLEY GRAVES
*RESIDENT JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
(302) 856-5257

September 22, 2016

Vincent A. Bifferato, Jr., Esquire
Robin M. Grogan, Esquire
Biefferato Gentilotti, LLC
100 Biddle Avenue, Suite 100
Newark, Delaware 19702

Chase T. Brockstedt, Esquire
Baird Mandalas Brockstedt, LLC
1413 Savannah Road, Suite 1
Lewes, Delaware 19958

Louis J. Rizzo, Jr., Esquire
Reger Rizzo & Darnall LLP
1523 Concord Pike, Suite 200
Brandywine Plaza East
Wilmington, Delaware 19803

**Re:   Pavik v. George & Lynch, Inc.**;
        C.A. No. S14C-01-006 (Consolidated Matters)

On Defendant George & Lynch, Inc.'s Motion for Summary Judgment: GRANTED
On Plaintiffs' Motion for Summary Judgment: DENIED

On Defendants State of Delaware and Delaware Department of Transportation's Motion
for Summary Judgment:      GRANTED

Dear Counsel,

A number of motions are pending before the Court in the instant litigation. For the

reasons set forth herein, the Court grants Defendant George & Lynch, Inc.'s Motion for

Summary Judgment. The Court also grants the Motion for Summary Judgment filed

jointly by the State of Delaware and the Delaware Department of Transportation. The

remaining motions for summary judgment on the cross-claims are rendered moot by this decision.

## Factual Background

On March 2, 2012, the State of Delaware ("Delaware") and the Delaware Department of Transportation ("DelDOT") entered into a contract with George & Lynch, Inc. ("George & Lynch") to repave various portions of roads in Sussex County, including Omar Road. In deciding to repave these roads, DelDOT opted to use a paving process known as cold in-place recycling ("CIPR"). CIPR involves removing and milling the top several inches of a road's existing asphalt, mixing the crushed asphalt with a binding agent, and immediately spreading the recycled material back on the road surface and compacting the recycled mixture. After a period of time during which the CIPR surface fully hardens, or "cures," a final topcoat is applied and the repaving process is complete. The recycled base cures for approximately one week. During the curing time frame, the road is open to unrestricted traffic.

Per the General Contract Plan Notes, DelDOT's contract with George & Lynch was to conform to (1) DelDOT's standard specifications dated August 2001 and as amended by the supplemental specifications, (2) the contract's special provisions, (3) the most recent standard construction details, (4) the Delaware Manual on Uniform Traffic Control Devices ("DMUTCD"), and (5) the contract plans and specifications. Collectively, these documents (the "Contract Documents") laid out the parameters of a

maintenance of traffic ("MOT") plan.

George & Lynch[1] began work on Omar Road[2] on August 14, 2012. Prior to the commencement of work, George & Lynch placed "permanent" warning signs on the roadway as dictated by DMUTCD. These signs are considered "permanent" because they are not removed until the road work was completed. That is, the signs are not removed until the curing process is complete and the final topcoat has been applied. These permanent signs were staked into the ground at the beginning and end of the construction zone and along every side street. Placed at the proper intervals, they read, "ROAD WORK 1500 FT," "ROAD WORK 1000 FT," "ROAD WORK 500 FT," and "END ROAD WORK" as required by DMUTCD.

When CIPR was taking place, George & Lynch placed additional temporary signs. These warning signs indicated that a flagger was in the area and that a lane was closed. At the end of each day of construction, George & Lynch removed the temporary signs.

The Contract Documents specified that the recommended work day on Omar Road was from 8:00 a.m. until 4:00 p.m., Monday through Friday. At the end of the work day, all temporary signs were to be removed from the right of way.

_____

[1] George & Lynch actually subcontracted the CIPR work to another company, "EJ Brennan." However, George & Lynch did not relinquish its responsibilities under the Contract Documents when it did so. In effect, then, EJ Brennan acted as George & Lynch's agent. References herein to actions taken by George & Lynch may, in some circumstances, actually refer to actions taken by its agent, EJ Brennan.

[2] This area of construction is identified as "Location 10" in the Contract Documents.

3

On Friday, August 24, 2012, an inspector for DelDOT permitted Omar Road to be reopened to the public without any temporary signs in place. During Saturday afternoon and into Sunday morning, heavy rain storms struck southern Delaware. On Sunday, several calls were made to DelDOT's Traffic Management Center ("TMC")[3] complaining about potholes that had developed along Omar Road. Ultimately, DelDOT dispatched a maintenance team who made repairs in the early afternoon of Sunday, August 24.

At approximately 11:00 p.m. on Sunday, August 26, 2012, Ashlee Reed was driving westbound on Omar Road in Frankford, Delaware. Ms. Reed lost control of the vehicle and it spun out, left the roadway while rotating counterclockwise, and struck a tree. The force of the impact resulted in the death of Ms. Reed's passenger, Jacquelyn Pavik, and non-fatal injuries to Ms. Reed. Ms. Pavik's parents and Ms. Reed (collectively, "Plaintiffs") filed suit against the State of Delaware, DelDOT, George & Lynch, and numerous other entities involved in the repaving design process and construction work.[4]

George & Lynch has filed a Motion for Summary Judgment arguing it did not owe a legal duty to Plaintiffs to erect temporary warning signs or to inspect the roadway at the time of the accident. Delaware and DelDOT (collectively, for purposes of this decision,

---

[3] DelDOT monitors Delaware's roads through the TMC. The TMC has direct access to the State Police who can report any problems observed during their routine patrols. The TMC is also notified if citizens report roadway problems through 911 or other emergency call numbers.

[4] A number of these claims against these other entitites have been previously dismissed by stipulation or court order.

"DelDOT") have filed a Motion for Summary Judgment on the basis that Delaware has not waived sovereign immunity in this case or, in the alternative, the Public Duty Doctrine applies.

## Discussion

This Court will grant summary judgment only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact.[5] Once the moving party has met its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[6] Where the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.[7] If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of his or her case, summary judgment must be granted.[8] If, however, material issues of fact exist, or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, summary judgment is inappropriate.[9] In the event that parties file cross-motions for summary judgment, "the

---

[5] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979).

[6] *Id.* at 681.

[7] Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, (1986).

[8] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991), *Celotex Corp., supra.*

[9] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

parties implicitly concede the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions."[10]

"In order to prevail in a negligence action, a plaintiff must show, by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff injury."[11] Liability depends upon whether the defendant was "under a legal obligation - a duty - to protect the plaintiff from the risk of harm which caused his injuries."[12] "[I]n appropriate situations, a trial court is authorized to grant judgment as a matter of law because no duty exists."[13] Whether a duty exists is a question of law to be determined by the trial court.[14]

The heart of this litigation concerns George & Lynch's legal duty, if any, to erect additional temporary warning signs and George & Lynch's legal duty, if any, to inspect the premises and repair any damage during off-hours. Plaintiffs and George & Lynch have filed crossMotions for Summary Judgment on these issues. DelDOT seeks summary judgment on the basis of sovereign immunity and/or the Public Duty Doctrine. There are no material facts in dispute and the matter is ripe for decision.

---

[10] *Browning–Ferris v. Rockford Enters.*, 642 A.2d 820, 823 (Del. Super. 1993); *see also* Super. Ct. Civ. R. 56(h).

[11] *Duphily v. Delaware Elec. Coop., Inc.*, 662 A.2d 821, 828 (Del. 1995).

[12] *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002).

[13] *Id.*

[14] *Id.*

**A.** **George & Lych's Alleged Liability**

**1.** **Duty to Erect Additional Temporary Warning Signs**

George & Lynch was required to comply with the Contract Documents, including the DMUTCD. The DMUTCD requires the erection of permanent warning signs in areas of construction. These are to be placed in a configuration as provided in Figure 6C-1 and Table 6C-1 of the DMTUCD. Specifically, three advance warning signs are required, at a distance of 500 feet apart in rural areas. A sign is also required in the termination area to alert drivers that normal traffic operations have resumed. The Contract Documents also contemplated the use of flaggers with a two-lane, two-way traffic lane closure[15] and a two-lane, two-way traffic detour.[16] During the CIPR process, temporary signs were put in place while roadwork was underway. Two of those signs indicated a flagger and a closed lane were ahead, and a third sign indicated road work was ahead. The signs were placed in accordance with Case 6 of the DMUTCD.

During the CIPR process, at the end of the day, traffic is returned to normal configuration. Vehicles travel on road that has been compacted in the CIPR process but not yet cured. The parties do not dispute the permanent warning signs were properly in place at the time of Ms. Reed's accident. Plaintiffs argue, however, the permanent warning signs were insufficient to alert Ms. Reed to the perils of traveling on Omar Road

---

[15] This formation is outlined at Case 6 in the DMTUCD.

[16] This formation is outlined at Case 15 in the DMTUCD.

as it underwent the CIPR process. Plaintiffs complain that the closest warning sign was over a mile away from the accident site. George & Lynch contends it was not negligent because its MOT plan was DelDOT-approved and prepared in accordance with the DMUTCD standards. The Court concurs with George & Lynch.

A very similar circumstance was considered in the recent case *Hales v. English*.[17] There, the contractor had submitted a traffic control plan to DelDOT for approval. DelDOT made some changes to the plan and then approved it. The Court's rationale in declining to find the contractor negligent applies here as well. Citing *High v. State Highway Department*,[18] the Court held:

> The [D]MUTCD is published by Del[DOT] and is issued to prescribe uniform standards and specifications for all traffic control devices in Delaware. Thus, [D]MUTCD does set forth the applicable standard by which [George & Lynch]'s actions must be judged. The [Plaintiffs] have not pointed out any instances where [George & Lynch] deviated in practice from its approved traffic control plan. Instead, [Plaintiffs] argue [George & Lynch] should have controlled the traffic in a different manner. This argument was considered in *High* and rejected, with the Court stating "We think it is clear that if there are two acceptable courses of action for the achievement of the same purpose, it is not negligence on the part of a defendant to pursue one rather than the other." That is what happened here.

---

[17] 2014 WL 12059005 (Del. Super. Aug. 6, 2014), *aff'd sub nom.*, *Hales v. Pennsy Supply Co.*, 2015 WL 2330065 (Del. May 14, 2015) (affirming for the reasons assigned by the Superior Court).

[18] 307 A.2d 799 (Del. 1973). In *High*, the general contractor prepared a plan for a detour and submitted the plan to the Highway Department for its approval. The plan conformed with the MUTCD in accordance with nationally accepted standards and the Highway Department approved its use. Nevertheless, plaintiff's expert opined that certain other steps should have been taken to safeguard public safety. The Court found that, because the contractor followed the approved plan exactly, plaintiff was unable to prove negligence on the contractor's part.

[George & Lynch] was following an approved plan. No negligence can follow in such a situation merely because there might have been another way to control the traffic.[19]

In the present case, the MOT plan was discussed at the preconstruction meeting. George & Lynch was required to submit a MOT report and payment was contingent upon DelDOT's review and approval of it. The final decision as to placement of signs would be made by a DelDOT Safety Officer. It was reiterated that lane closures may not be set up before daylight and must be taken down before dark for day work. This set up and take down includes the set up and take down of temporary signs. Bradford Saborio, engineer for DelDOT, testified that the use of temporary signs are typically reserved for situations where there has been a modification to a standard traffic configuration. These temporary signs are removed at the end of the day when the road is returned to a nonactive work zone. Omar Road was a nonactive work zone as defined by the DMUTCD when George & Lynch left the work site on Friday, August 24, 2012. No signs are required when work is finished for the day when a road has undergone CIPR. Mr. Saborio also observed that George & Lynch would need approval from DelDOT to alter the placement of the signs or to place any additional signs on the roadway.

Plaintiffs' observation that the closest warning sign was over a mile away from the accident site is immaterial. The work area was approximately four miles in length. Drivers are expected to be vigilant while traveling the length of the entire work area. It is

---

[19] *Hales*, 2014 WL 12059005, at *2 (citing *High*, 307 A.2d at 804).

worth noting that the DMUTCD as well as the testimony of DelDOT officials highlight the public policy of avoiding the overuse of warning signs for fear that drivers would minimize the importance of warnings if inundated with such warnings. The use of any warning sign must be based upon engineering judgment.[20] The DMUTCD provides, "The use of warning signs should be kept to a minimum as the unnecessary use of warning signs tends to breed disrespect for all signs. In situations where the condition or activity is seasonal or temporary, the warning sign should be removed or covered when the condition or activity does not exist."[21]

Plaintiffs note the DMUTCD permits the use of special, surface condition warning signs. To the extent Plaintiffs argue George & Lynch should have used its judgment to place additional, discretionary warning signs along Omar Road; *i.e.*, indicating a "rough road" or "loose gravel," there is no evidence that the road was rough or that loose gravel was present *at the end of the workday on Friday, August 24th* when the road was opened to general traffic and George & Lynch suspended work until Monday morning. Moreover, they have not demonstrated that DelDOT would have approved its request. To reiterate, George & Lynch needed DelDOT's approval to place *any* signs along the roadway.

In sum, George & Lynch was not negligent for following a DelDOT-approved temporary traffic control plan encompassing the use of advance permanent warning signs

---

[20] DMUTCD, Section 2C.02.

[21] *Id*.

10

and temporary warning signs while work was in progress. In briefing and at oral argument, Plaintiffs argued the case *Thurmon v. Kaplin*[22] supports the theory that George & Lynch could also be held liable under a common law duty owed to Plaintiffs. The Court rejects this position. The bottom line is that DelDOT managed the placement and use of warning signs at the worksite. The Court is not going to expand George & Lynch's duty beyond that which was defined by DelDOT in the Contract Documents.[23] In other words, the duty of care established by DelDOT through the Contract Documents and the DMTUCD will not be expanded simply because Plaintiffs' expert opined "more could have been done." More can *always* be done, in retrospect. George & Lynch's Motion for Summary Judgment is granted with respect to Plaintiffs' claims as they relate to improper signage.

## 2. Duty to Inspect and Repair During Non-Work Days

Pursuant to the Contract Documents, George & Lynch was authorized to work on Omar Road between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday. Absent permission, George & Lynch was prohibited from working on the weekends.[24]

---

[22] 1999 WL 1611327 (Del. Super. Mar. 25, 1999).

[23] The Court notes the situation in this case is different from that even in *Hales*. In *Hales*, it appeared the contractor initially submitted a MOT plan that did not satisfy DelDOT engineers and it was "tweaked." There has been no evidence presented to indicate that George & Lynch's MOT plan, at any point, deviated from the parameters outlined in DMUTCD.

[24] "Working Day" is defined under the Standard Specifications as any calendar day except Saturdays, Sundays, and holidays, among other specified days. Standard Specification 101.91. To work on Sundays, a contractor must receive permission from a DelDOT engineer.

DelDOT retained the duty to inspect and monitor the road on nights and weekends. During these times, the Contract Documents mandated that George & Lynch "be prepared to make repairs as needed after normal working hours in the case of an emergency."[25] George & Lynch submitted to DelDOT an emergency contact list for several of its employees.

After the rain on Saturday and Sunday, DelDOT received several complaints about the condition of Omar Road through its TMC. Through internal error on the part of DelDOT and/or the TMC, DelDOT did not contact George & Lynch. DelDOT dispatched its own maintenance crew to patch the damaged roadway.

Plaintiffs argue that, because George & Lynch had knowledge of previous raveling or deteriorating road conditions on roads that have undergone the CIPR process, especially in areas of shade or following rainfall, they had a duty to inspect Omar Road after learning of the rainstorms. However, under the terms of the Contract Documents, George & Lynch owed a duty to repair any damage to Omar Road during off-hours *upon DelDOT's request*.[26] "In Delaware, it is the scope of the undertaking as defined in the contract, which gives shape to the independent contractor's duty in tort."[27] DelDOT did not request George & Lynch's services to repair the potholes that developed following the

---

[25] Standard Specification 107.07 (as amended 1/3/2008).

[26] *See Brown v. F.W. Baird, LLC*, 2008 WL 324661, at *2-3 (Del. Feb. 7, 2008).

[27] *Id.* (internal citations and quotation marks omitted).

weekend rain. As such, George & Lynch had no duty to inspect or repair the road.[28]

Not only did George & Lynch not have a duty to patrol an area for possible problems during off-hours but DelDOT's affirmative action to repair Omar Road broke any causation link between George & Lynch's work and Ms. Reed's tragic accident.

Again, DelDOT cleared the road for re-opening on Friday, August 24, 2012. *Absent notice of an issue*, George & Lynch was relieved of the duty to repair deteriorating road conditions that developed thereafter. George & Lynch's Motion for Summary Judgment is granted with respect to Plaintiffs' claim that George & Lynch failed to adequately inspect and repair the roadway during non-work days.

## 3. Request for Punitive Damages

The Court has concluded George & Lynch did not have a duty to Plaintiffs to erect additional warning signs or to repair the road conditions that developed off-hours. Accordingly, Plaintiffs' request for punitive damages based upon wilful and wanton misconduct on the part of George & Lynch must necessarily fail as well.

## B. DelDOT's Alleged Liability

The Court has concluded DelDOT retained the duty to oversee the safety of Omar Road during off-hours. Moreover, the Court has held the work that DelDOT did to Omar Road broke any casual connection between the work George & Lynch did and Ms. Reed's

---

[28] George & Lynch has highlighted the financial cost of Plaintiffs' argument: Why would DelDOT require - and pay - George & Lynch to patrol the same roads DelDOT already monitored through the TMC?

accident.

DelDOT argues it is entitled to summary judgment because it is sovereignly immune from suit and/or the Public Duty Doctrine bars the suit and cross-claims against DelDOT. In support thereof, DelDOT attached an affidavit of the Delaware Insurance Coverage Administrator in which she avers that DelDOT did not purchase any insurance or establish any self-insurance program through the Insurance Determination Committee that would be applicable to the events alleged in Plaintiffs' complaint. With the exception of EJ Brennan, the parties did not oppose DelDOT's Motion for Summary Judgment. EJ Brennan's answer to the Motion for Summary Judgment did not address the issues raised by DelDOT's Motion for Summary Judgment or raise any issue of material fact.

The Court agrees that DelDOT did not waive sovereign immunity under the facts of this case. The Constitution of the State of Delaware provides for sovereign immunity absent waiver thereof by the General Assembly.[29] Title 18 of the Delaware Code provides:

> The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether the same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.[30]

The Delaware Supreme Court has held that the waiver of sovereign immunity only

---

[29] Del. Const. art. I, § 9, *Turnbull v. Fink*, 668 A.2d 1370 (Del. 1995).

[30] 18 *Del. C.* § 6511.

14

applies where the State has obtained insurance to cover the risk.[31] Here, DelDOT has demonstrated that it did not have liability insurance. DelDOT's Motion for Summary Judgment is granted on the basis of sovereign immunity.

## Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Summary Judgment is DENIED. George & Lynch's Motion for Summary Judgment is GRANTED. DelDOT's Motion for Summary Judgment is GRANTED. The remaining motions for summary judgment on the cross-claims are rendered moot. Plaintiff Pavik's claim against Plaintiff/Defendant Reed remains viable. The parties are to contact the Court to schedule an office conference at their earliest convenience.

IT IS SO ORDERED.

Very truly yours,

*/s/ T. Henley Graves*

T. Henley Graves

oc:   Prothonotary

cc:   All Counsel of Record

---

[31] *Doe v. Cates*, 499 A.2d 1175, 1179 (Del. 1985).